## NEWMAN v. ROACH et al.

No. 15466—Opinion Filed Sept. 15, 1925.

**1. Contracts—Annulment by Agreement — Consideration.**

While the contract remains executory on both sides, an agreement to annul on one side is a consideration for the agreement to annul on the other, and vice versa. On the other hand, if the contract has been executed on one side an agreement without any new consideration that it shall not be binding is without consideration and void.

**2. Same—"Waiver."**

"Waiver" in the law of contracts may be defined as the intentional relinquishment of a known right under the contract based on a consideration.

**3. Action — Conditions Precedent — Demand—Futility.**

It is a general rule that when it is manifest that a demand would have been wholly futile if made, it is unnecessary to go through the formality of making it.

**4. Limitation of Actions—Starting of Statute After "Reasonable Time for Performance."**

Under section 5060, C. S. 1921, providing that "If no time is specified for the performance of an act required to be performed a reasonable time is allowed, * * *" the statute of limitations begins to run at the expiration of such time. The question of what is a reasonable time for the purpose of determining whether the statute of limitations had commenced to run should be submitted to the jury for them to determine, taking into consideration all the facts and circumstances disclosed by the evidence in the case.

**5. Oil and Gas — Breach of Contract to Drill Well—Measure of Damages.**

The measure of damages for the breach

of an express covenant in a contract to drill certain wells for oil and gas to a depth of 2,500 feet free of cost to the plaintiff is, under the facts and circumstances of this case, the reasonable cost of drilling the wells.

(Syllabus by Pinkham, C.)

Commissioners' Opinion, Division No. 5.

Error from Superior Court, Okmulgee County; J. H. Swan, Judge.

Action by Mattie N. Roach; Mattie N. Roach, adm'x of the estate of C. F. Roach, deceased; Mattie N. Roach, guardian of Jessie and Frances Roach, minors, against William C. Newman. Judgment for plaintiffs, and defendant brings error. Reversed.

Arthur H. McLain, N. A. Gibson, J. L. Hull, and T. L. Gibson, for plaintiff in error.

R. E. Simpson and Hummer & Foster, for defendants in error.

Opinion by PINKHAM, C. This was an action brought by the defendants in error, as plaintiffs, against the plaintiff in error, as defendant, for damages claimed to have arisen from a breach of a contract by which it is claimed the defendant, William C. Newman, undertook to drill three wells upon certain lands in Okfuskee county.

The petition alleged substantially that plaintiffs are the heirs at law of C. F. Roach, who died April 6, 1920; that about January 10, 1916, the defendant, for a valuable consideration, executed and delivered to C. F. Roach an assignment and agreement, whereby defendant assigned to the said Roach an undivided one-thirty-second interest in certain oil and gas leases and agreed to drill three wells thereon to a depth o 2.500 feet; that the assignment and agreement contains a provision as follows:

"Said William C. Newman agrees to drill three wells at three widely separate points on said leases free from expense to the said C. F. Roach; said wells to be drilled to the depth of 2.500 feet or to oil or gas in paying quantities at a less depth. There shall be no expenses chargeable against said C. F. Roach for the drilling and equipping of said three wells up to the tanks for the same, if productive. If dry holes, the equipment shall remain the property of William C. Newman. Thereafter the expense of drilling and operating said leases shall be borne by the said William C. Newman and the said C. F. Roach in the proportions in which they have interests in said leases. It is further agreed that if said wells are drilled to depths greater than 2,500 feet there shall be no charges against C. F. Roach."

It is alleged that defendant, pursuant to the terms of said assignment, drilled one well to a depth of 2,565 feet, but that he failed and refused to drill the other two wells as provided by said agreement; that said contract does not provide the time when said wells should be drilled, but that on or about the 23rd day of September, 1920, the defendant disposed of his entire interest in said leases and rendered it impossible for him to comply with said agreement; that by reason of his failure to drill said two wells the plaintiffs have been damaged in the sum of $40,000. The petition was filed on December 9, 1922.

The defendant, in his answer, admitted that on January 10, 1916, he executed and delivered to C. F. Roach an assignment of an undivided interest in certain oil and gas mining leases, and that he drilled one well pursuant to said agreement. For further defense he alleged that at the time of making said assignment to Roach it was orally agreed between him and Roach that the three wells which defendant undertook to drill should be the same three wells which defendant, under a certain contract made and, entered into by and between him and the Edgar Oil Company, on or about the 6th day of December, 1915, had undertaken to drill, as consideration for an assignment to be made to him by the said Edgar Oil Company upon the completion of the said three wells of certain oil and gas leases, which constituted a part of the leases described in the assignment referred to in the plaintiff's petition. A copy of said assignment was attached to defendant's answer.

Defendant further alleged that thereafter, after completing the first of said wells it was mutually agreed between Roach and the defendant that defendant should surrender such rights as he had under the contract with the Edgar Oil Company, and be released from any further liability or obligation to drill the remaining wells, either under the contract with the Edgar Oil Company, or under the terms of the assignment to Roach; that said agreement was made orally between Roach and defendant; that thereafter defendant agreed with the Edgar Oil Company to surrender his rights under the contract with said company, and in consideration there'or the defendant was released from any obligation to drill any further wells pursuant to the same. For further defense defendant pleaded that if any cause of action accrued to Roach or to plaintiff's personal representative, the same

accrued more than five years prior to the time of the commencement of this action, and the same was therefore barred by the statute of limitations.

The contract between the defendant and the Edgar Oil Company, attached to defendant's answer, shows that the three wells which defendant was to drill under said contract were to be completed within 12 months from the date of the contract, to wit, December 6, 1915.

At the close of the evidence the court sustained the demurrer of plaintiff to the same and instructed the jury to return a verdict for the plaintiff, submitting to the jury only the question of the amount of damages. The jury returned a verdict for the plaintiff, and fixed the amount of her recovery at $20,000. Judgment was rendered by the court on the verdict of the jury. Defendant's motion for a new trial was overruled, exceptions reserved, and the cause comes regularly on appeal by the defendant to this court.

The first proposition discussed by defendant is that the evidence offered on behalf of defendant constituted a sufficient defense to this action. The evidence discloses that sometime in 1915, the defendant, Newman, was interested in taking oil and gas leases on lands in certain territory described as township 11, range 11, in Okfuskee county; that he verbally employed Roach to procure oil and gas leases in that particular township; that Roach took leases on some 1,295 acres in the summer of 1915 in the aforesaid territory; that no specific arrangement as to what Roach's compensation was to be was made until after Roach had acquired the leases; Newman paid the expenses: Roach signing all checks therefor, "W. C. Newman, by C. F. Roach." Shortly after December 12, 1915, Roach's remuneration for procuring these leases for Newman was agreed upon and on January 10, 1916, Newman executed to Roach the assignment of a one-thirty-second interest in certain leases in the aforesaid territory, containing the clause which is made the basis of this action, whereby Newman agreed to drill three wells on said leases free of expense to Roach, with the provision that, "Thereafter the expense of drilling and operating said leases shall be borne by the said William C. Newman and the said C. F. Roach in the proportions in which they have said leases."

It further appears that prior to the making of this contract with Roach, Newman, on December 6, 1915, had made an agreement with the Edgar Oil Company, whereby it

was to assign to him a one-half interest in certain leases in the said township 11-11, some of which were the leases in which Roach was given a one-thirty-second undivided interest by Newman's assignment to him, the consideration for this being an agreement by Newman to drill three wells upon said leases within 12 months after the date of the contract. The assignment for the one-half interest in these leases was placed by the Edgar Oil Company in escrow with an escrow agreement covering the mutual obligations of the parties. When Newman negotiated with Roach for the execution of the contract sued upon in this case, he exhibited this escrow agreement, and the copy of the proposed agreement attached to it, and he and Roach agreed that the location of the three wells proposed to be drilled by Newman upon the lands he then agreed to assign interests in to Roach should be made at such points as to protect the contract which he had with the Edgar Oil Company. By this contract with the Edgar Oil Company it was agreed that all carrying rentals on the leases should be paid one-half by the Edgar Oil Company and one-half by Newman.

After making the contract with Roach, Newman drilled one well upon the first location, he and Roach having previously located the place for drilling the three wells, and they were located so as to be in compliance with the Edgar Oil Company contract. The well drilled upon the first location was drilled to a depth of 2,565 feet and resulted in a dry hole.

In the summer of 1916, after the completion of this well, it appears from the testimony of defendant, Newman, that he had a conversation with Roach relative to the drilling of the first well and the second and third wells called for by his contract with Roach, and that in that conversation Roach and the defendant agreed to annul the obligations to drill the second and third wells for the reason that the first well demonstrated that the territory involved was dry territory and that it was useless to spend any more money in testing the same; that at that time he and Mr. Roach did not discuss the surrender of the option to purchase the Edgar Oil Company leases, in which the defendant and that company were both claiming an interest. It further appears that on September 23, 1920, the defendant, Newman, assigned all of his interest in these leases, in which he and Roach were jointly interested, to the Kingwood Oil Company.

It is the theory of counsel for defendant

that the oral agreement between Roach and Newman amounts to a waiver of performance on the part of Roach, the person entitled to demand performance, which, having been acted upon by Newman to his detriment, estops Roach or his legal representative from claiming a breach of the contract by reason thereof. A number of authorities are cited in the brief of counsel for defendant which, it is argued, support the proposition that Roach's consent to a nonperformance of Newman's contract to drill the remaining two wells, given to Newman under the circumstances as shown by the evidence, effectively bars, by estoppel, the maintenance of an action for breach of such agreement.

In the instant case we think it clear that the contract involved between Newman and Roach was fully executed by Roach. Roach had performed all that was required of him in procuring the oil and gas leases desired by the defendant, and the contract was executory as to Newman, who was required to drill the wells, by his contract, and he had failed and refused to do so.

"While a contract remains executory on both sides, an agreement to annul on one side is a consideration for the agreement to annul on the other; and vice versa. On the other hand, if the contract has been executed on one side, an agreement without any new consideration that it shall not be binding is without consideration and void." 13 C. J. 602.

In the recent case of Walker v. Johnson, 102 Okla. 9, 227 Pac. 113, it is said in the syllabus:

"Section 5081, Comp. Stat. 1921, which provides: 'A contract in writing may be altered by a contract in writing, or by an executed oral agreement, and not otherwise,' not only prevents the alteration of a written contract, as to some of its terms, by an unexecuted parol contract, but also prevents an alteration of the contract as to all of its terms, so as to amount to a substitution of a new contract for the written contract, unless such new contract is in writing, or is an executed oral contract."

The facts as disclosed by the record and the clear provisions of section 5081 supra, distinguish many of the cases cited by defendant from the instant case. Furthermore, the authorities generally hold that a waiver cannot be made without a valid consideration.

"A 'waiver', in the law of contracts, may be defined as the intentional relinquishment of a known right, under the contract, based on a consideration." Elliott on Contracts, Cumulative Supplement 1913-23, sec. 1858.

In Smith v. Minneapolis Threshing Machine Co., 89 Okla. 156, 214 Pac. 178, it is said in the syllabus:

"A waiver in the nature of a contract as distinguished from one by estoppel must be founded on a valuable consideration and made by the person or at his instance for whose benefit the rights waived exist."

Neither do the pleadings or proof establish facts constituting an estoppel. The burden was on the defendant to plead and prove every element constituting an estoppel in order to invoke that defense.

"That an estoppel in pais must be specially pleaded and proven is in accord with the general current of authorities in code states." Farmers' State Bank of Ada v. Keen, 66 Okla. 62, 167 Pac. 207; citing many Oklahoma cases.

Defendant argues that if Roach's waiver of performance, acted upon by Newman, was not sufficient in and of itself to constitute a defense, and that the agreement by Roach and Newman, that the two wells should not be drilled, was ineffective unless there was a consideration therefor, still it is contended that as a matter of law, there was a consideration for this agreement sufficient to support it as an agreement to rescind. The argument is that the consideration for the agreement to release Newman from drilling the wells is that Roach was released from his obligation to pay his proportionate share of the subsequent drilling and development after the drilling of the first three wells. This contention cannot be sustained. The defendant's statement is that the agreement was made because the territory appeared to be dry. It does not appear in the evidence that the parties had in mind the release of Roach from his agreement to pay his proportionate part of the development after the drilling of the three wells. All that can be inferred from the evidence on this point is that Roach agreed that the wells need not be drilled because the defendant thought the territory was dry and therefore did not desire to drill them. We conclude, from a careful review of the evidence, that the release relied upon by the defendant made by Roach was simply a naked promise orally given without consideration therefor, and was therefore not binding upon either Roach or his legal representatives in an action for damages for failure to comply with the written contract.

It is further urged that the consent of

Roach to the nonperformance of the contract, even if revokable, excuses nonperformance on the part of Newman, at least until demand for performance was made. The defendant in his answer denied the obligation to drill the wells in question, claiming that he had been released from the obligation. The facts also show that he had sold his entire interest in the leases on which the wells were to be drilled, and it is clear, we think, under such a state of facts a demand, if made, would have been unavailing. To the general rule that a demand is necessary to put a party in default when no time is specified in the contract, as in the instant case, there are well defined exceptions recognized by all the authorities. It is a general rule that, where it is manifest that a demand would have been wholly futile if made, it is unnecessary to go through the formality of making it. Altman v. Phillips County Bank (Kan.) 122 Pac. 874; 1 C. J. 980; St. L. & S. F. Ry. Co. v. Richards, 23 Okla. 256, 102 Pac. 92. We think this rule applicable to the facts of this case. It is true that, notwithstanding the fact that Newman had assigned all of his interest in the leases involved to the Kingwood Oil Company, it was still possible for him to have carried out his contract with Roach, because Roach still retained his one-thirty-second interest in the said leases; but we think, in view of all the facts and circumstances connected with the transaction, it appears reasonably certain that a demand for performance would not have been complied with. St. L. & S. F. Ry. Co. v. Richards, 23 Okla. 256, 102 Pac. 92; Rawlings v. Ufer, 61 Okla. 299, 161 Pac. 183.

It is next urged that in sustaining the demurrer to defendant's evidence and instructing a verdict for the plaintiffs, the court deprived defendant of another defense properly pleaded and clearly proven—that of the statute of limitations. The contract upon which the suit is brought, according to the undisputed evidence, was dated January 10, 1916. The breach thereof claimed to be the basis of the cause of action was the failure of Newman to drill two of the three wells he agreed by the contract to drill. The contract itself specified no time for performance of this obligation. Newman completed the first well in March, 1916. Suit was not filed until December 9, 1922.

Section 5060, Comp. St. 1921, is as follows:

"If no time is specified for the performance of an act required to be performed a reasonable time is allowed. If the act is in its nature capable of being done instantly, as for example, if it consists of the payment of money only, it must be performed immediately upon the thing to be done being ascertained."

"The true test to determine when the cause of action accrues is to ascertain the time when the plaintiff could first maintain his action to a successful result." Broadwell v. Board of Com'rs of Bryan County, 88 Okla. 147, 211 Pac. 1040.

The general rule as to when the cause of action accrues under a contract stating no time for performance is stated in 25 Cyc. 1071, as follows:

"It is a general rule that where no time is fixed for performance by the promisor, he must perform within a reasonable time, and the statute of limitations begins to run at the expiration of such time. What constitutes a reasonable time depends upon the circumstances of the particular case and is a question for the jury."

The trial court, in its statement of the case to the jury, told the jury that:

"However, the only issue for you to decide is the measure of damages plaintiffs are entitled to under the following instructions: * * *"

Instruction No. 2 is as follows:

"You are instructed to return a verdict for the plaintiff in such amount as you find from the evidence she is entitled to."

Instruction No. 3 is as follows:

"You are instructed that the measure of damages in this case is the amount which you find it would require to drill two dry holes to a depth of 2,500 feet on the leases included in the assignment from Newman to Roach at such time as you find that such wells should have been drilled."

Under the evidence the question of fact to be determined by the jury was what constituted a reasonable time for the drilling of said wells, because if a reasonable time had elapsed five years prior to the commencement of the action, the statute of limitations would operate to defeat any recovery on the part of the plaintiffs, and the court's peremptory instructions would necessarily be erroneous. In other words, the question of what was a reasonable time for the purpose of determining whether the statute of limitations had run should have been submitted to the jury for them to determine, taking into consideration all the facts and circumstances disclosed by the evidence. This was a vital issue in the case made by the pleadings and the evidence, and it was the duty of the court to give upon its own

motion a substantially correct and proper instruction of the law as applicable to the facts and issues joineu. First Nat. Bank of Mounds v. Cox, 83 Okla. 1, 200 Pac. 238; Gypsy Oil Co. v. Ginn, 88 Okla. 99, 212 Pac. 314.

It is further contended by the defendant, that the court erred in instructing the jury that the measure of damages was the amount required to drill two dry holes to a depth of 2,500 feet. The argument is that, as the undisputed evidence shows that Roach was assigned a one-thirty-second interest in the leases, the defendant at the time retaining thirty-one-thirty-seconds, the true measure of damages, therefore, for the breach of the contract would be a one-thirty-second part of the cost of the well. We are unable to agree with this contention and none of the decisions cited are applicable to the facts disclosed by the record. The measure of damages for the breach of an express covenant in a contract to drill certain wells for oil and gas to a depth of 2,-500 feet free of cost to the plaintiff is, under the facts and circumstances of this case, the reasonable cost of drilling the wells at the time the wells should be drilled. Ardizonne v. Archer, 72 Okla. 70, 178 Pac. 263.

For the failure of the trial court to properly instruct the jury on the question of fact as to what constituted a reasonable time for the drilling of said wells, we think the case should be reversed and remanded to the trial court, with directions to grant the defendant a new trial.

By the Court: It is so ordered.

Note.—See, under (1) 13 C. J. p. 602, § 626. (2) 40 Cyc. pp. 252, 264. (3) 1 C. J. p. 890, § 80. (4) 37 C. J. p. 817, § 166. (5) 17 C. J. p. 859, § 173.