## CAMPBELL v. WOOD.

No. 18406.   Opinion Filed Jan. 22, 1929.

Rehearing Denied June 11, 1929.

F. B. Dillard, for plaintiff in error.

Johnson & Gish, for defendant in error.

LEACH, C. This is an appeal by W. T. Campbell, who was defendant in the trial court, from a judgment against him in the district court of Tulsa county, in favor of Homa Wood. It was alleged in part in the petition of Homa Wood, that he and the defendant, Campbell, entered into a written contract, a copy of which was attached to and made a part of the petition. The material parts of the contract, dated February 16, 1923, recited that Homa Wood was the owner of the oil and gas leases covering certain described tracts of land, 225.93 acres in Creek county; that he, Wood, agreed to furnish defendant, Campbell, with complete abstracts of title thereto; that Campbell was to have 30 days for examination of such titles, and in the event he approved the same, he agreed within 30 days thereafter to begin the drilling of a well at his own expense on the land, and with due and reasonable diligence to drill the same to the Wilcox sand unless oil and gas be found in paying quantities at a shallower depth, but not shallower than the horizon of the Dutcher sand found at the approximate depth of 2,250 feet; that should said well be a producing oil and gas well, then the cost of cleaning out and installing connections to the tanks, the tanks, and all expenses of operation and lease equipment after production, were to be borne equally between the parties.

The contract further recited that Wood was to assign to Campbell all rights in a certain contract relating to the payment of the sum $1,500 as dry-hole money towards the drilling of a well as proposed in the agreement. Assignments of the interest in the leases were to be placed in escrow and delivered to Campbell upon completion of the proposed well. Furthermore, it was stipulated that Wood was the owner of an oil and gas lease on 80 acres of land, not included in the acreage upon which the well was to be drilled, and that Campbell was to receive all over and above the sum of $5,000 which might be derived from the sale of the particular lease; that Campbell was to have charge of the development, operation and equipment of the leases. except in the drilling of necessary offset wells; that, on or before the 10th of each month, the party having the management of the property

should prepare a statement of the costs of development, equipment and operation during the preceding months and deliver the same to the other party in interest with an account of their proportionate part of said cost, the party in charge to furnish proper duplicate invoices of costs to support all charges made against the lease, and the same to be attached to all statements rendered therefor.

The petition further alleged that, as a consideration for the conveyance to defendant, Campbell, of a one-half interest in said oil and gas leasehold, he agreed to drill at his own cost and expense a well upon said tract to the Wilcox sand, and that all of such expenses, until such time as a producer might be brought in, should be wholly borne and paid for by defendant; that about May 25, 1923, the defendant completed what he termed and stated to plaintiff to be a producing well, and at his special instance and request for funds with which to purchase material necessary for operation of said lease equipment, the plaintiff advanced for such purpose the sum of $1,000, and the further sum of $150 as pumpers' wages; that in addition to such sums paid directly to the defendant, he paid on account of the expenses of operating said lease, items aggregating the sum of $1,431, as shown by a statement attached to petition marked "Exhibit B," for which the defendant was liable for one-half thereof: that defendant paid no part of the items stated, and wholly failed to account to plaintiff for any of the items of cash, expenses in the equipment and operating of said well after oil was produced therefrom in paying quantity; that plaintiff paid more than his one-half of the cost of operating and equipping the well; that after plaintiff had made payments as aforesaid, various and sundry lien claimants of the defendant, who had furnished material or labor in the drilling of the well down to the oil sand, filed their liens against the well and the leasehold in question, for amounts aggregating approximately $9,000, and established their claims as liens against the property, causing a receiver to be appointed therefor, and the property sold in satisfaction of the liens; that plaintiff performed all the conditions of the contract on his part; that defendant breached his contract in failing to pay the cost of drilling said well, and in permitting the property to be sold in satisfaction of the liens: that by reason of the default of the defendant in the drilling of said well to the Wilcox sand, the plaintiff lost his entire interest in the

225.93 acres and the producing well thereon and all sums of cash paid directly to defendant as well as all sums paid on account of the joint operation of the producing well; that such default was the natural and proximate cause of the loss to the plaintiff in the sum of $10,200, the unpaid cost of the well, and one-half the sum of $2,581 paid to defendant for operating expenses of the well.

Plaintiff prayed judgment against defendant for the sum of $11,321.75 on his first cause of action.

For a second cause of action plaintiff alleged that, on June 5, 1923, he loaned to the defendant, Campbell, the sum of $1,250, and prayed judgment for the amount with interest.

The defendant, Campbell, generally and specifically demurred to plaintiff's petition, which was overruled, and thereafter he filed an answer and cross-petition in which he admitted that he entered into the contract as alleged by plaintiff; that he completed a well to the Dutcher sand which produced oil in paying quantities, which was accepted by the plaintiff as a paying well, by reason whereof defendant was relieved under the terms of the contract from drilling the well to the Wilcox sand, or to any deeper horizon, and defendant's contract with plaintiff was complete. Defendant further alleged that, under the terms of the contract, each of the parties thereto was liable and bound to pay the expense of equipping and operating the well; that both he and plaintiff, Wood, defaulted on the payment of such costs and a part thereof, and that plaintiff had no claim against defendant on account thereof. Denied he was liable under the contract for certain sums and items as listed and shown in plaintiff's exhibit B. Admitted that plaintiff had paid out the sum of $1,319 in equipping and operating the well, for which he, defendant, was liable for one-half thereof. Further denied that he was liable for any part of the sum of $130 paid out as rentals on certain of the leases involved; that he, defendant, did not desire to pay such rental, but desired to let the leases lapse. The defendant, Campbell, by way of set-off and counterclaim, alleged in his answer that shortly before the contract was entered into, plaintiff presented him with a geological plat or map of the acreage involved, showing the wells for oil and gas which had been drilled on said acreage, or in close proximity with the surface elevation and the elevation of the base or Glenn sand, which plat or map was signed by Virgil O. Wood, brother of the plaintiff, who defendant

understood was reputed to be a good geologist; that the map or plat showed such information from which a geologist could and should determine the geological condition of the leases and the acreage involved, and to show whether or not a geological structure which was likely to produce oil or gas would be found on such block or acreage; that the map showed the base or Glenn sand at a certain depth; that it showed an east dip; that he, defendant, relied implicitly upon the information as to the geological structure and its elevation as shown on the plat; that plaintiff reported to him that said map was correct, and, in full reliance thereon, he proceeded to buy and have placed where the well was to be drilled a complete derrick at the cost of $2,000, and made a contract to drill a well; that he did drill a well to the Dutcher sand at a cost of $12,964.77; that after he had incurred the liability in said contract and purchase, and had a derrick erected, and had contracted for the casing, he discovered plaintiff had purposely and fraudulently misrepresented to him the geological conditions pertaining to the block of acreage, and that the plat furnished him signed by Virgil O. Wood was purposely and flagrantly false; that the plat should have shown the datum of the Glenn sand at a different elevation, and, instead of showing an east dip, it should have shown a normal west dip, and that under such conditions there would be no geological structure on the acreage involved; that he, defendant, made an agreement to sell a one-fourth interest in certain of the acreage for a consideration of $7,000 with the well proposed to be drilled completed; that said price was a reasonable one for such acreage, but that such sale was made subject to the geology shown by the map referred to, and that when the party with whom he was trading checked the geology, he discovered the defect and error in the map as hereinbefore stated; that by reason of the false representations of the plaintiff and of Virgil O. Wood, defendant lost the sale, and was damaged in the sum of $12,944.77; that he would have sold said acreage before the well was completed, and intended to and would have sold his interest, with the agreement that he should complete said well at and for the sum of $14,000; that he could have completed the well for the sum stated which would have left him a profit of $1,035.23; that the purchaser would have taken over all the expenses which the defendant incurred for equipping the well and operating the lease; that he was forced to incur the expense of cleaning and equipping and operating the lease in the sum of $4,017.79, for one-half of which sum plaintiff was liable. Defendant in conclusion prayed that plaintiff take nothing, and that he recover from plaintiff the sum of $5,000 as damages.

To such answer and cross-petition, the plaintiff filed a reply in which he generally denied the allegations of the answer and cross-petition, except such as were admitted. Admitted that prior to the making of the contract he received from his brother, Virgil Wood, certain geological data and map relating to the premises in question, which map purported to show the estimate or conclusion of Virgil Wood as to the subsurface formation on the land in question as deduced or projected from the well log taken from the well of the Parafine Oil Company on other lands. Further stated that "without waiving the insufficiency of the alleged counterclaim set forth in paragraphs Nos. 10 to 12, inclusive, to state facts constituting a cause of action," he was not a geologist, but gave to the defendant such information and data as he had upon the geology; that, so far as he knew, the map appeared to be correct from the known data; that he did not represent that he had personal knowledge of the correctness or accuracy of such geological data, or of the opinion of the geologist drawn therefrom, nor did he warrant the same. Further admitted that the actual and reasonable value of an undivided one-half interest in the oil and gas leasehold described and referred to in the answer, with a completed well thereon, was the sum of $14,000 at or about the time of the completion of said well.

Upon a trial of the cause, the plaintiff objected to the introduction of any testimony under the alleged counterclaim or set-off, of the defendant and, at the conclusion of defendant's testimony, plaintiff demurred to the evidence submitted by the defendant under his counter claim or set-off, which demurrer was sustained, and the court submitted to the jury only the question of the amount of plaintiff's claim as set out in the first cause of action, and instructed a verdict for plaintiff on the second cause of action for the sum of $1,250. The jury returned a verdict in favor of the plaintiff on his first cause of action for the sum of $10,728.65, and upon the second cause of action, the sum of $1,250, and judgment was entered accordingly.

After denial of motion for a new trial the defendant brings this appeal.

There was testimony that the well drilled under the contract here involved produced at first about 35 barrels of oil per day, but had settled down to one or two barrels production at the time of its sale. Liens for expenses incurred by defendant, Campbell, in the drilling and operating of the well, were filed, and foreclosure action thereon was instituted in the district court of Creek county, which resulted in the appointment of a receiver for the property, and its sale.

The first proposition argued and presented by plaintiff in error is to the effect that the judgment of the district court of Creek county was erroneous and inadmissible because the contract between Wood and Campbell provided that the assignment of the one-half interest in the leases to Campbell was to be held in escrow until the well was completed; that since he never complied with his agreement, no interest or right in the leases passed to Campbell, and therefore no right of action accrued in favor of the lien claimants under which such lien claimants could sell the leasehold, and especially the interest not contracted for by Campbell. The cases cited by plaintiff in error under the proposition are not controlling, and appear inapplicable, because of a difference in the facts in the cases cited from those in the case at bar. Furthermore, it appears the parties to the contract and this action considered the contract complied with sufficiently to take the assignment which had been placed in escrow from the bank, and the defendant, Campbell, agreed that Wood might hold such assignment as security for a loan of $1,250 made to Campbell. Both of the parties to this action were parties defendant in the suit in Creek county wherein the liens were foreclosed and the leases sold, and we do not understand the rule to be that the defendant in such action can now attack or question the judgment of the district court of Creek county in the manner sought to be done. Wheeler v. Ridpath, 126 Okla. 290, 259 Pac. 247; McIntosh v. Holtgrave, 79 Okla. 63, 191 Pac. 739.

The record is sufficient to show the Creek county judgment valid and proper as to the one-half interest contracted and conveyed to defendant, Campbell, and at least to that extent Wood lost his interest in the lease through the failure of defendant to satisfy the liens thereon. The statement is made by plaintiff in error that the judgment introduced in evidence was not admissible because not properly certified, but such defect is not pointed out, and we fail to observe wherein the judgment was inadmissible. We are of the opinion that the first proposition argued and presented in brief of plaintiff in error cannot be sustained.

The second proposition presented and argued in brief of plaintiff in error relates to the question of whether the proper measure of damages was applied in plaintiff's recovery. The trial court, in referring to plaintiff's first cause of action, advised the jury that it was the duty of the defendant to pay all the cost of drilling and completing the well, and that plaintiff was entitled to recover as damages such amount of the cost of drilling and completing the well as was shown by the evidence that the defendant failed to pay. The defendant below, Campbell, requested the court to instruct the jury that the measure of damages which plaintiff could recover, in such a case, would be the value of the lease and well sold, while in his brief he suggests that the damage sustained by plaintiff, Wood, would be the value of a one-half interest in the lease sold if such interest had been liable and legally sold. Furthermore, that had the plaintiff paid off any valid liens necessary to protect his interest, he could recover such amounts; that since he, Campbell, drilled the well, the measure of damages stated in the case of Ardizonne et al. v. Archer et al., 72 Okla. 70, 178 Pac. 263, and similar cases, i. e., the cost of drilling the well, was not the proper measure of damages.

Plaintiff Wood was entitled to have a well drilled on the acreage and to hold and own an undivided half interest therein free of liens. Had the defendant failed to complete the well or plugged it upon reaching the Dutcher sand, such action would have resulted in no greater loss or damage to plaintiff than in permitting the well and acreage to be lost after the well was drilled through sale for unpaid expenses incurred in its drilling.

It was as much the duty of the defendant to pay for the well when drilled as it was to drill it in the first instance. The plaintiff testified that he was financially unable to pay off the liens against the well. In the case of Newman v. Roach. 111 Okla. 269, 239 Pac. 640, it was there shown that the plaintiff in error, in consideration of an assignment to him of an interest in certain leases, contracted to drill three wells. He drilled only one of the wells, and the court held in that case that the measure of damages was the reasonable cost of drilling the wells as contracted.

A similar measure of damages was ap-

plied in the following cases: Okmulgee Producing & Refining Co. v. Baugh, 111 Okla. 203, 239 Pac. 900; Eysenbach v. Cardinal Petroleum Co., 110 Okla. 12, 236 Pac. 10; North Healdton Oil & Gas Co. v. Skelley, 59 Okla. 128, 158 Pac. 1180; Ardizonne et al. v. Archer et al., supra.

The actual cost of drilling the well appears to have been greater than the amount awarded plaintiff on his first cause of action, which cause also involved a claim for one-half of certain moneys paid in the connecting up and operating the well.

Assuming the allegations of the defendant's answer and cross-petition to be true, wherein he alleges that a one-half interest in the leases and well was worth $14,000, the measure of damages as fixed, and the amount recovered, would be less than under the rule and basis contended for by the defendant. It appears that the trial court limited the damage and instructed the jury under the lowest measure and rule of damages to which the plaintiff should be limited under the record, if entitled to any amount, and the defendant has not been prejudiced thereby and cannot complain.

"Where the trial court directs a verdict in favor of the plaintiff and against the defendant, for the least amount for which a verdict could be returned, based upon the pleading and the evidence offered by defendant, no prejudice results therefrom to the defendant, and he cannot be heard to complain because of such direction." Harris v. Davis, 97 Okla. 52, 221 Pac. 1009.

Under the facts and record in this cause, and since the measure of damage as fixed and allowed by the trial court did not exceed and was less than the entire cost of drilling the well, and less than the measure and rule of damage established in such cases where no well is drilled at all, and within any rule of damage under which the plaintiff should be limited under the record, we are of the opinion there was no prejudicial or reversible error committed as against the defendant below in fixing and limiting the particular damage to the amount of the unpaid cost of drilling and completing the well.

The third proposition presented by plaintiff in error relates to the action and alleged error of the trial court in sustaining the demurrer of plaintiff to defendant's evidence which related to his counterclaim or set-off, and in refusing to submit such defense and counterclaim to the jury. Plaintiff in error says the demurrer interposed was to the defendant's answer and cross-petition, and was so construed and held by the trial court, but we fail to agree with such contention. While the reply of plaintiff refers to the insufficiency of the allegations of defendant's answer and counterclaim to state a cause of action, yet no demurrer appears to have been filed or presented thereto. The demurrer interposed by plaintiff and the court's ruling thereon were, as we view it, based upon the insufficiency of the defendant's evidence to establish a set-off or counterclaim. Plaintiff in error says there was sufficient evidence to take the question of the counterclaim or set-off to the jury.

The defendant, Campbell, had considerable experience, according to his testimony, in promoting and drilling oil and gas wells, having made about 25 such deals prior to his contract and agreement with the plaintiff. Neither of the parties was a geologist. No warranty or reference is made in the written contract between the parties as to the geology on the acreage or of any plat or map relating thereto. Both parties foresaw the probability of a dry hole in drilling on the acreage, and provided in the contract that, in case no oil or gas was found in paying quantities, then Campbell should plug the hole at his expense, also he was to have $1,500 "dry hole" money. After defendant's attention was called to the error or discrepancy in the plat or map on which he said he relied, he employed a firm of geologists to examine and make a report on the acreage. No drilling had been done on the proposed well at that time, according to the testimony of defendant, although considerable expense had been incurred by him, and he had built a derrick and entered into a contract with a driller to drill the well. The defendant, after learning of the alleged discrepancy in the plat, proceeded with the contract and drilled the well to the Dutcher sand, and during the progress of the drilling sold an 80-acre lease belonging to the plaintiff, Wood, specifically referred to in the contract, and received as his share of the proceeds of such sale the sum of $2,000 after paying the broker $1,500. Notwithstanding the alleged error or discrepancy in the plat or map prepared by Virgil O. Wood, the defendant drilled the well to what he concluded and represented to be and now contends was a well producing paying quantities of oil.

The defendant, in the case of Eysenbach v. Cardinal Petroleum Co., supra, interposed, as a defense to an action against him for damages for failure to drill a well,

the claim that the plaintiff's agent, in offering the sale of leases to him, falsely represented that the property was situated upon a gas dome, and would with development result in satisfactory gas production to the defendant, and that he relied thereon to his damage, and was induced to enter into the contract sued upon by the plaintiff. The court in the body of the opinion in referring to such defense stated:

"In passing on this question, it is enough to say that the record discloses that the plaintiff's agent and defendant possessed about equal knowledge concerning the subject-matter of the contract, and both stood on equal ground to pass judgment on the value of the property for oil or gas production. Therefore, the representations so made by plaintiff's agent would not constitute actionable fraud in this suit, and the court did not commit error in refusing to submit this defense to the jury. Long v. Woodman, 58 Me. 49; Williamson v. Holt, 147 N. C. 515, 61 S. E. 384; Warner v. Benjamin (Wis.) 62 N. W. 179; First National Bank v. Swan (Wyo.) 23 Pac. 743."

A somewhat similar holding will be found in the case of Myers v. Chamness, 114 Okla. 220, 245 Pac. 879; Davie et ux. v. Godwin-Barclay Co., 120 Okla. 274, 251 Pac. 1042; Rock v. Fisher, 115 Okla. 53, 241 Pac. 496.

"A cause will not be reversed because the trial court sustained a demurrer to the evidence, when there is no evidence reasonably tending to support the defendant's case, and where it is entirely apparent that justice has been done by the ruling." Easley v. American State Bank of Rosedale, 99 Okla. 140, 225 Pac. 926.

"A judgment will not be reversed upon appeal for failure of trial court to give certain requested instructions upon a theory of defense, where the evidence thereon appears insufficient, as a matter of law, to raise such issue or to sustain such defense had it been submitted to the jury." Haubert v. Navajo Refining Co., 129 Okla. 195, 264 Pac. 151.

From a consideration of defendant's evidence, in the light of the record, we are of the opinion that the same was insufficient to constitute and show actionable fraud on the part of the plaintiff as an inducement to enter into the contract, and that the trial court was justified and correct in refusing to submit to the jury the question of the counterclaim or set-off alleged and pleaded.

We fail to find any substantial or prejudicial error as against the rights of the defendant warranting a reversal, and we conclude and hold that the judgment of the trial court should be and is hereby affirmed.

BENNETT, TEEHEE, REID, and HERR, Commissioners, concur.

By the Court: It is so ordered.

Note.—See "Appeal and Error," 4 C. J. §2893, p. 922, n. 75. "Contracts," 13 C. J. §991, p. 783, n. 66. "Damages," 17 C. J. §173, p. 859, n. 65. "Judgments," 34, C. J. 869, p. 567, n. 67. "Mines and Minerals," 40 C. J. §763, p. 1133, n. 35. "Trial," 38 Cyc. p. 1547, n. 20.