RUSHING et al. v. MAYFIELD CO. et al.*
No. 6572.

Circuit Court of Appeals, Fifth Circuit.
Dec. 22, 1932.

*Rehearing denied January 28, 1933.

W. T. Saye, of Longview, Tex., for appellants.

Claude McCaleb, of Houston, Tex., H. E. Lasseter, Gordon Simpson, and W. F. Weeks, all of Tyler, Tex., Oswald S. Parker, of Beaumont, Tex., and Paul A. McDermott, of Fort Worth, Tex., for appellees.

Before BRYAN, SIBLEY, and HUTCHESON, Circuit Judges.

SIBLEY, Circuit Judge.

S. P. Rushing, joined by J. C. Falvey as part assignee, sought specific performance or in the alternative damages as at law, from the Mayfield Company and others holding under it with notice, of a contract touching the lease of Texas oil lands. The suit was dismissed on motion, and this appeal was taken.

The written contract, dated October 3, 1930, is signed by both parties. Briefly stated, its terms here material are these: The Mayfield Company having signed a lease to Rushing for a consideration to be paid of $19,000, the lease and $2,000 of the consideration are deposited in escrow in Citizens' National Bank of Tyler. The lessor within twenty days is to deliver to lessee a certified abstract of the title. Within ten days thereafter lessee is to point out in writing any objections or defects, and lessor is to have ten days thereafter to cure them. "Should lessor fail to cure such defects within the time specified, then the said lessee shall have the right to have such defects cured if he should choose to do so, provided he does so within ten days after the time allowed lessor to cure such defects. Lessor is to furnish lessee a good merchantable oil title, and lessee within fifteen days after such title is furnished or tendered is to pay lessor at the Citizens' National Bank of Tyler, Texas, the balance of said consideration, to-wit, $17,000.00, and the Bank is thereupon to pay the lessor the $2,-000.00 deposited herewith and deliver the lease to the lessee." If lessor within the time specified furnishes such title and lessee fails to pay, the $2,000 deposited is to be forfeited to lessor as liquidated damages, and the lease returned to it. If lessor fails in the specified time to furnish such title, and lessee fails to exercise his option to cure the defects, the lessee has the right to withdraw the deposit of $2,000 and the lease goes back to lessor. The petition states that Mayfield Company was late in delivering the abstract, but Rushing accepted it, and within ten days pointed out certain defects by a writing which he delivered to Mayfield Company's attorneys who had full authority in the premises. The defects were not cured in ten days thereafter, and Rushing on November 29, 1930, demanded back his $2,000 or that Mayfield Company proceed to cure the defects. An amendment was filed which struck out nothing from the petition, but gave an account of what next happened somewhat variant from the statements of the petition. We follow the amendment. Mayfield Company then asked and was granted "a few days" therefor. On January 18, 1931, on Rushing's inquiring, he was told that the curative work would be submitted to him "within three or four days." Without submitting it, however, on the fourth day, January 22, 1931, Mayfield Company leased a portion of the land to one of the other defendants, and in February and May other portions to yet others who knew of Rushing's claims. Rushing learned of this on January 28, 1931, and forthwith instituted in a state court a suit which is not exhibited, but in which he alleges he prayed for a specific performance. Because he could not get a speedy trial, he abandoned that suit, and on September 7, 1931, instituted the present bill in which he offered to pay into court the $17,000 balance of purchase price. It is alleged that the lease on January 28, 1931, had risen in value from $19,000 to $532,500, and damages of $513,500 were prayed if specific performance be denied. There is also an allegation that "plaintiffs have at all times been ready and willing and able to perform each and every condition and obligation required of them by said contract, and have offered to do so on numerous occasions," but there is no statement that Rushing at any definite time either before or after January 28, 1931, had tendered the $17,000, or otherwise signified a willingness to accept the title as it was, or bound himself to do so. It is not alleged that the defects he pointed out were ever removed, or that the title was ever made a merchantable one such as he was originally bound to accept.

The contract concerned property subject to and actually undergoing violent fluctua-

tions in value. Short definite time limits were fixed for the action of each party at every stage of it. There is no doubt that time was of its essence, and that prompt and positive action was due. Much of what is said in Mandeville & Thompson, Inc., v. Danciger Oil & Refining Co., 62 F.(2d) 130, decided December 12, 1932, is applicable here. The plaintiffs contend that the contract bound Mayfield Company to have or to get a good title, and that, when it failed to do so, Rushing, by offering himself to perform, could at least recover damages. The defendants contend among other things that the contract required only that Mayfield Company exhibit and convey such title as it had, and that, on its failing of acceptance and on Rushing's electing not to perfect it, his only right was to take down his money and reject the lease. We find it unnecessary to settle this difference. It is clear that Rushing was not bound to take the lease unless or until a merchantable title was presented him within the time fixed. He was not bound to cure the title himself, though he had a limited time to do so if he wished. He declared the title unsatisfactory, and, though it is not disclosed what its defects were, he is in no position to say and does not allege that they were not such as to render the title not good and merchantable. When after ten days it had not been cured, he was by a clear provision of the contract discharged from all obligation, and was free at his option to take his money down as he declared to Mayfield Company he was about to do. He thereby signified that he would not undertake himself to cure the defects. Aside from probable difficulties under the statute of frauds in adding anything by parol to the contract, nothing is alleged to have been subsequently said or done by Rushing that would bind him to take the title as it was and pay for it. We do not know that he so committed himself, even in his suit in the state court or at any time before the present suit was filed. The most that can be made out of what is alleged is that Rushing offered to leave the matter open for a few days, and finally for three or four days, for Mayfield Company to get the title cured, but with no acceptance of it as it was and no commitment to pay a penny unless within that time it was fully cured. On the fourth day the time allowed Mayfield Company to cure it was gone. Thereafter on offer of a good title Rushing would not

have been bound to take it. A good title, however, is not alleged ever to have been gotten. At best since November 29th Rushing was only an optionee, with his option kept open to waive defects and take the title as it was. This he did not do, nor bind himself in any wise to pay.

The general allegation above quoted of readiness and offer to perform on his part is of no help to him, for it speaks only of "obligations required of him by the contract," and we have just been at pains to show that he was under no obligation. It is not stated just what his offers were, nor when made, so it is impossible to conclude that, within the time limited by any option, he had bound himself or tendered the purchase price. Of course the contract made by closing an option according to its terms may be specifically enforced, but, unless the option is thus timely turned into a mutually binding contract, there is nothing to be enforced. Irrespective of questions of new consideration and the statute of frauds as affecting the parol extension of time, and without deciding whether the remedies named in the contract on its lapse are exclusive, we think no mutually binding contract made within any agreed time is shown. So far as specific performance is concerned, the case is controlled by Kelsey v. Crowther, 162 U. S. 404, 16 S. Ct. 808, 40 L. Ed. 1017. See, also, Tilton v. Sterling Coal & Coke Co., 28 Utah, 173, 77 P. 758, 107 Am. St. Rep. 689. The suit is one for specific performance brought in a federal court of equity. The attempt to join as an alternative relief a prayer to recover damages as at law for breach of contract cannot be recognized as proper equity practice. Nor does it render the whole suit one that ought originally to have been brought at law which is to be transferred to the law docket under Equity Rule 22 (28 USCA § 723), or 28 USCA § 397. The court of equity was called on to test the validity of the equity suit by a motion to dismiss on the merits, and dismissed it for want of equity. We approve this action expressing no opinion as to what, if any, relief the appellant may have at law. The recovery of the $2,000 deposited which was not sued for was inappropriate in a judgment upon a motion to dismiss, and should be eliminated.

Thus modified, the judgment is affirmed.