**R. OLSEN OIL CO. v. FIDLER.**
**FIDLER v. R. OLSEN OIL CO.**
Nos. 4467, 4468.

United States Court of Appeals
Tenth Circuit.

Oct. 29, 1952.

Phillips, C. J., dissented in part.

9. Footnote 7, supra.

T. Murray Robinson, Oklahoma City, Okl. (C. E. Barnes, Oklahoma City, Okl., W. E. Bondurant, Jr. and Hervey, Dow & Hinkle, Roswell, N. M., were with him on the brief), for appellant.

Irwin S. Moise and Lewis R. Sutin, albuquerque, N. M., for appellee.

Before PHILLIPS, Chief Judge, and HUXMAN and PICKETT, Circuit Judges.

HUXMAN, Circuit Judge.

H. D. Fidler brought this action against R. Olsen Oil Company herein called Olsen, to recover damages caused by Olsen's failure to drill an oil and gas well to the contract depth. By the terms of the contract, Fidler assigned oil and gas leases to a block of 6,000 acres in Torrance County, New Mexico, to Olsen, in consideration of which Olsen agreed to drill an oil and gas well thereon to a depth of 6,000 feet, unless oil and gas were found at a lesser depth, and to make available a log of the well to Fidler. The contract further provided that if igneous rock or other impenetrable substances were encountered at a lesser depth, Olsen was relieved from further drilling. Olsen discontinued drilling operations at 3,680 feet and abandoned the well on the ground that igneous rock had been encountered.

The complaint set out three causes of action. The first was based on the contention that igneous rock had not in fact been encountered and that, therefore, Olsen breached its contract by discontinuing drilling operations. The second cause of action is not involved in this appeal and need not be further referred to. In the third cause of action Fidler sought damages for slander of title to the oil and gas leases he held around the assigned acreage, based upon an allegation that Olsen had falsely published a report that igneous rock had been encountered, thereby rendering Fidler's retained leases valueless. At the conclusion of the trial, the court dismissed the second and third causes of action and submitted the first cause to the jury. It returned a verdict in favor of Fidler. In Case Number 4467 Olsen has appealed from the judgment on the verdict and in Number 4468 Fidler has

appealed from the judgment dismissing his third cause of action.

### Number 4467.

■ Olsen contends that the verdict of the jury on the first cause of action is without support of substantial evidence. There was a sharp conflict in the testimony offered by Fidler and that offered by Olsen on the question whether igneous rock had in fact been encountered. Expert witnesses testified for both parties. Setting out this evidence in detail would add nothing of value to the opinion and would only unduly extend it. We, therefore, content ourselves by stating that we have carefully examined the record and, while the contention that the greater weight of the evidence is with Olsen is not without support, we are of the view that there is sufficient substantial evidence of probative value to support the verdict and judgment and they, therefore, may not be set aside on that ground.[1]

■ It is further urged that the court erred in not sustaining Olsen's motion for a directed verdict at the close of the evidence. This contention is predicated on the ground that Fidler failed to introduce evidence in his case in chief as to the measure of damages, if any, and that such evidence was admitted only during his rebuttal testimony. Fidler offered such evidence in chief but it was first excluded. Thereafter the court reversed its ruling, concluding that the evidence was proper and it was then offered on redirect examination. When this was done, Olsen stated that it understood that Fidler had been allowed to reopen his case to prove damages and that it would like the opportunity of rebutting such testimony, which request was granted. Under these facts, Olsen's contention in this respect is wholly without merit and need not be further discussed.

■ It is also urged that the court's instruction with respect to igneous rock was erroneous and prejudicial and placed an un-

due burden on Olsen. The court instructed the jury that "As used in the contract between the parties, to encounter igneous rock or other impenetrable substances means to reach a geological formation within the specified maximum depth of 6,000 feet *which, in the business of production of such minerals, it is recognized will reasonably preclude the probability of finding oil or gas in or below such formation.*" Appellant's objection is to the italicized portion of the instruction. Appellant argues from this instruction the jury might conclude that despite these obstacles there was still an accumulation of oil at a lower depth and would disregard Olsen's right to relief under the contract. This instruction in substance follows a similar instruction given by the trial court in Cosden Oil & Gas Co. v. Moss, 131 Okl. 49, 267 P. 855, 858. The Supreme Court of Oklahoma in passing upon the instruction in the Cosden case said: "This is but another way of saying that oil or gas, the minerals sought by both parties, does not exist either in or beneath a granite mass formation, which apparently under the record is a prevalent geological theory and so recognized by operators in the oil and gas industry, and that when granite was encountered in the well the contract was concluded, as further effort at discovery at the particular point of prospect was rendered futile." We think the instruction as given by the court is correct; that its meaning is clear and that the jury was not misled thereby.

■ The most serious question concerns the instruction relating to the measure of damages. The court instructed the jury that the measure of damages, if any, would be the amount of money for which a reasonably prudent driller would have undertaken the obligation of drilling the well; in other words, that the measure of damages was the reasonable cost of drilling the well. This is the well established rule in Oklahoma.[2] This being a New Mexico

---

1. Lavender v. Kurn, 327 U.S. 645, 66 S.Ct. 740, 90 L.Ed. 916; Tennant v. Peoria & P. U. Ry. Co., 321 U.S. 29, 64 S.Ct. 409, 88 L.Ed. 520; Cities Service Oil Co. v. Harvey, 10 Cir., 148 F.2d 780; Fleming v. Kellett, 10 Cir., 167 F.2d 265.

2. United States Fidelity & Guaranty Co. v. Gray, 106 Okl. 222, 233 P. 731; Eysenback v. Cardinal Petroleum Co., 110 Okl. 12, 236 P. 10; Newman v. Roach, 111 Okl. 269, 239 P. 640; Okmulgee Producing and Refining Co. v. Baugh, 111 Okl.

case, the Oklahoma rule is not binding upon the court except as it may be persuasive.

Olsen criticizes the Oklahoma rule and urges that the correct rule is laid down by this court in Hoffer Oil Corporation v. Carpenter, 10 Cir., 34 F.2d 589, 593. In the Hoffer case this court did say that the measure of damages was not the cost of drilling the well but was the value of the services to be performed and what one similarly situated would ordinarily pay therefor. That pronouncement, however, must be taken in light of the facts the court there had before it. There the transfer of the leases by plaintiff did not constitute the entire consideration for the drilling of the well. It constituted only a contribution toward the drilling thereof. It is obvious that where one only makes a contribution toward the cost of drilling a well he is not entitled as damages to the full costs thereof. The court there also stressed the fact that the plaintiff had no interest in the well or the acreage on which it was drilled. These facts, we think, are materially different from the facts in this case. According to the written contract in this case, plaintiff did not merely make a contribution toward the drilling of the well. As far as the record reveals, he furnished the entire consideration therefor. The contract states that in consideration of the transfer of these 6,000 acres of leases, Olsen agreed to drill the well to a depth of 6,000 feet and make available the information obtained thereby. Fidler also held an option to purchase royalty in the assigned acreage.

■ While an option to purchase does not constitute a vested interest in the land itself, it is a thing of value and creates rights that are valuable.[3] It creates rights for a violation of which damages may be recovered.[4] It creates an interest that may

be assigned[5] and is capable of specific enforcement in court.[6] These facts, therefore distinguish this case in any event from the Hoffer case, supra.

■ Here we have a contract, clear and unambiguous, in which Olsen agreed to perform services for a valuable consideration furnished entirely by Fidler. These services consisted in doing what was necessary to obtain the geological information 6,000 feet below the earth's surface. This information could be obtained only by drilling a well. Olsen thus agreed to drill a well to obtain the information contracted for. Whether the consideration paid was more or less than is usually paid for such services is immaterial. If Olsen made a good bargain, he obtained more than was ordinarily paid for such services. If he got less than was ordinarily paid for the services, he made a bad bargain. But when he breached his contract, Fidler's damage was measured as stated in the Hoffer case "by the usual and customary charge for such services", which under the facts of this case is the usual and ordinary cost of drilling the well, because that is what Olsen has agreed to do and that is the only way he could obtain the information he agreed to furnish.

■ A further contention is made that the court should have instructed the jury that since Fidler did not own all the leases which were assigned that his recovery should in any event be limited to that portion of damages represented by his partial ownership of the leases. Without passing upon the soundness of this contention, it is sufficient to say that no request was made for such an instruction nor was an objection made to the court's instruction on damages based on this ground and, therefore, the question may not be raised for the first time on appeal.

203, 239 P. 900; Campbell v. Wood, 137 Okl. 90, 278 P. 281; Lorraine Petroleum Co. v. Bartlett, 138 Okl. 8, 280 P. 286.

3. Chournos v. Evona Inv. Co., 97 Utah 335, 93 P.2d 450; Myers v. J. J. Stone & Son, 128 Iowa 10, 102 N.W. 507.

4. Teagarden v. Calkins, 55 Mont. 35, 173 P. 549.

5. 66 C. J., Vendor & Purchaser, § 32, p. 508.

6. Rushing v. Mayfield Co., 5 Cir., 62 F.2d 318; Ebensberger v. Sinclair Refining Co., 5 Cir., 165 F.2d 803; Brunson v. Carter Oil Co., D.C.Okl., 259 F. 656.

### Number 4468.

In this case Fidler has appealed from the order of the court dismissing his third cause of action based upon slander of title. The third cause of action in substance alleged that Olsen falsely published and reported that it had encountered igneous rock or other impenetrable substances, thereby rendering valueless the adjoining leases held by plaintiff to his damage. At the close of plaintiff's case, the court sustained a motion to dismiss the third cause of action.

■ Malice is an essential ingredient of the offense of slander of title. Summers on Oil and Gas in § 660 deals at length with slander of title. Most of the illustrations deal with seismographing and the effect of false information therefrom on adjoining acreage. The article and authorities cited may be summarized by stating that where one acts in good faith in making a statement with regard to drilling operations on property in which he has an interest and on which he is carrying on drilling operations he is not liable for disparagement of title to adjoining property, even though such report be false or erroneous.

■ It is doubtful if the complaint on its face stated a cause of action for slander of title. It does not allege malice. It merely states that Olsen falsely published and reported that it had encountered igneous rock or other impenetrable substances. There was, however, in any event a complete lack of evidence from which malice could be inferred and the court, therefore, properly sustained the motion to dismiss the third cause of action.

The judgments appealed from in Number 4467—R. Olsen Oil Company, a corporation v. H. D. Fidler—and Number 4468—H. D. Fidler v. R. Olsen Oil Company, a corporation—are severally Affirmed.

PHILLIPS, Chief Judge (dissenting in part).

It is my opinion that, under the facts presented, the trial court's instruction on the measure of damages was erroneous. In all other respects, I concur in the opinion of the court.

R. Olsen Oil Company, hereinafter called Olsen, entered into a written contract with Fidler under which, in consideration of the assignment of oil and gas leases covering approximately 6,000 acres of land in Torrance County, New Mexico, by Fidler to Olsen, Olsen agreed to drill an oil and gas well, at a stipulated location on the area embraced in such leases, to a depth of 6,000 feet, unless oil and gas should be discovered in paying quantities at a lesser depth, or unless igneous rock or other impenetrable substances should be encountered at a lesser depth. The contract provided that the well should be completed at the sole expense of Olsen; that Olsen should furnish to Fidler samples of all formations and waters encountered in the drilling of the well; that Fidler should at all times have access to the derrick floor and the drilling log of such well; and that Olsen, upon request from Fidler, from time to time should furnish to Fidler samples of all cores taken from the well. Fidler retained no interest in the assigned oil and gas leases. He owned other oil and gas leases in the area surrounding the acreage embraced in the assigned leases.

The complaint, as amended, alleged that the reasonable cost of drilling the well at the stipulated location to a depth of 6,000 feet would be $120,000. Fidler introduced testimony of an expert that the reasonable cost of drilling the well at the stipulated location was $120,000. Fidler testified at the trial below that the leases assigned had a value at the time of the assignment of $15 an acre, or approximately $90,000. I think the facts disclosed by the record justify the conclusion that Fidler's estimate of the value of the leases was probably high. During the drilling of the well, Olsen undertook to sell units in the drilling block covered by the assigned leases to a number of major oil companies at a price of $15 per acre if the well was a commercial producer and $12 per acre should the well be a nonproducer and was unable to effectuate any sales. Thus, it will be seen that the consideration which Olsen received under the contract was far short of the full cost of drilling such well. The additional cost was to be borne by Olsen.

Fidler held options to acquire certain royalty interests from lessors under the assigned leases for a stipulated price. These options created no present legal or equitable interests in oil and gas rights covered by the assigned leases.[1] He did not exercise the options.

Since Fidler retained no interest in the assigned leases, the well when completed and the lessee's interest in the oil and gas, if any, produced therefrom would have belonged wholly to Olsen. Fidler would have received no direct benefit from the well itself as distinguished from the geological information which the drilling of the well would have disclosed. That information would have been valuable to Fidler in determining the value of the oil and gas leases he held on acreage adjacent to the land covered by the assigned leases, in determining his course of action with respect to the development thereof, and in determining whether he should exercise his option rights.

In my opinion, the instant case is indistinguishable from the case of Hoffer Oil Corporation v. Carpenter, 10 Cir., 34 F.2d 589, 593. There, as here, in return for information to be furnished, the assignor of the leases contributed a portion of the cost of drilling the well and the remaining cost of drilling the well was to be borne by the assignee of the leases. For the reasons more fully stated in the opinion in that case, it is my opinion that the proper measure of damages in the instant case was the value of the services which Olsen agreed to furnish Fidler with respect to the geological information which would be obtained in the drilling of the well. In Hoffer Oil Corporation v. Carpenter, supra, we said:

"We conclude that the value of such services is what a reasonable person owning land adjacent to the lands on which another proposes to drill such a test well, similarly situated and of similar oil-bearing potentialities as the land of the parties in the instant case, would ordinarily pay by way of contribution to the cost of such test well for the log of such well and the geological information which the drilling thereof would disclose. While a witness should not be permitted to speculate or conjecture as to possible or probable damages, still the best evidence obtainable, under the circumstances, is receivable, and this is often nothing better than the opinion of well-informed persons. Daughetee v. Ohio Oil Co., 263 Ill. 518, 105 N.E. 308, 311.

"The contract being a usual one in the oil fields, we think evidence could be produced, in all probability, which would show what, under similar circumstances, is ordinarily and usually paid for such services. This, we think, would afford a reasonable basis for computation, and would furnish sufficient data for an approximate estimate of the value of such services. It would, of course, be something less than the full cost of drilling the well, because with the full amount the contributor could drill a well on his own land."

The opinion of the trial court says that the value of such services under the facts in the instant case is the usual and ordinary cost of drilling the well. Such a recovery would enable Fidler not only to obtain the geological information, but would enable him to drill a well on his own land and enjoy the full benefit of the lessee's interest in any oil or gas produced from such well. That is more than he contracted for and more than he contemplated he would receive.

It is my opinion that the damages in the instant case should have been measured by the rule laid down in Hoffer Oil Corporation v. Carpenter, supra.

---

1. Richardson v. Hardwick, 106 U.S. 252, 254, 1 S.Ct. 213, 27 L.Ed. 145; Todd v. Citizens' Gas Co. of Indianapolis, 7 Cir., 46 F.2d 855, 866, Phenix Ins. Co. v. Kerr, 8 Cir., 129 F. 723, 727, 66 L.R.A. 569; Milwaukee Mechanics' Ins. Co. v. B. S. Rhea & Son, 6 Cir., 123 F. 9, 11; 55 Am.Jur., Vendor and Purchaser, § 27, p. 493.