## DAVIS et ux. v. GODWIN-BARCLAY CO.

No. 16918—Opinion Filed Nov. 23, 1926.

Rehearing Denied Jan. 4, 1927.

**1. Oil and Gas—Cancellation of Conveyance of Royalty Interest for Misrepresentation by Grantee—Insufficiency of Evidence.**

Where it is sought to rescind the contract and cancel the conveyance to a royalty interest in an oil and gas lease, on the ground of misrepresentations alleged to have been made to the grantor by the grantee as to the value of said royalty interest, and upon which grantor relied in executing the conveyance, and the evidence shows that said grantor refused to accept the proposition to purchase at the price offered, when false statements were made as to value, and further shows that grantor made an investigation as to royalty values in the neighborhood of the land under the lease and without hindrance on the part of the grantee, and thereupon executed the conveyance for a greater consideration than the offer first made, the allegations of the petition are not supported by the evidence.

**2. Cancellation of Instruments—Right to Rescission of Contract Barred by Laches.**

An action for rescission of a contract and cancellation of the writings thereof cannot be maintained without a substantial compliance with section 5079, C. S. 1921, and where the evidence fails to show such compliance, the action is barred by laches.

(Syllabus by Threadgill, C.)

Commissioners' Opinion, Division No. 3.

Error from District Court, Kay County; Claude Duval, Judge.

Action by C. G. Davis et ux. against the Godwin-Barclay Company to rescind the contract and cancel the conveyance of a royalty interest in an oil and gas lease. Judgment for defendant, and plaintiffs appeal. Affirmed.

McKeever, Moore & Elam, for plaintiffs in error.

J. S. Burger and Simons, McKnight, Simons & Smith. for defendant in error.

Opinion by THREADGILL, C. Plaintiffs in error brought this action to cancel a royalty conveyance made by them to defendant on November 8, 1922, on the ground of fraud and inadequacy of consideration, both of which were pleaded in the petition and denied by the answer of defendant. The case was tried to the court as one of equitable cognizance and judgment rendered for defendant, and plaintiffs have appealed on the ground that the judgment is against the weight of the evidence.

For convenience. the plaintiff in error C. G. Davis will be referred to herein as plaintiff, and Evelyn Davis as plaintiff's wife, and defendant in error as defendant.

The undisputed facts in the case are substantially as follows: Plaintiff and his three brothers, Rufus P. Davis, commonly called Percy, Howard I. Davis and Leslie M. Wilshire, whose name was changed by adoption, and his sister, Edith Manion, inherited from their father's estate 160 acres of land, described as the S. W. ¼ of section 27, T. 25 N., R. 1 W., in Kay county, and which is now a part of the Tonkawa oil field. On May 15, 1922, these parties executed an oil and gas lease to H. J. Barclay for a term of five years and as long thereafter as oil or gas was produced in paying quantities. This lease was taken as the property of the Godwin-Barclay Company. At that time there was no development for oil and gas closer to this 160 acres of land than three miles. Plaintiff was a man about 32 years of age and his wife about 30, and they lived at Mercer, Mo., where he was engaged as a telegraph operator. They had never lived in Oklahoma, but plaintiff had visited here. He made a visit to Kay county for a short time in 1915, and again in the fall of 1921, just after the discovery oil well was brought in three miles south of the Davis land, and then in November of 1922, when he and his wife visited his brother, Percy, who lived on the land, and when the contract in controversy was executed. Plaintiff and his wife were persons of common school education and of average business ability and

plaintiff had special training in telegraphy. The defendant, through its principal stockholders and officers, H. J. Barclay and J. O. Godwin, desired to purchase one-half of the 1/8th royalty interest provided for in the lease owned by the four brothers and one sister. They bought one-half of the interest of said Percy Davis for $1,200 and made an agreement with him to pay him $100 in each case to assist them, Barclay and Godwin for the company, in buying one-half of the interest of the other brothers and sister for $800 each. For this purpose Percy wrote each of them a letter, saying he had sold his interest to the company for $800 and stating that they could get the same price for their said interest if they desired to sell. These letters were turned over to the company, and H. J. Barclay wrote each one a letter, offering $800 for his or her one-half royalty interest and enclosed the letter written by Percy together with conveyance to be executed for such interest of $800 each and addressed these letters to the respective parties. It appears that all of them received the letters and accepted the proposition and sold their interest and conveyed it to defendant, except the plaintiff. He received the letter and the conveyance enclosed to him about the 1st of October, 1922, and on October 26th he answered:

"Referring to your letter of October 4th, have delayed answering on account of sickness and left Mercer shortly after receiving same. Do not care to sell royalty at the figure you mention. I expect to be down there in the next week or ten days. In case you write further in regard to this, please write me here."

About November 4th, thereafter, he and his wife arrived at Tonkawa and the next day they went out some four miles in the country and visited their brother Percy, who lived on the Davis farm, and he talked the royalty matter over with his brother, and the same day or the next day they drove over the prospective oil field and visited a well which was being drilled about one-half mile east of the Davis farm, and talked to different persons about oil and gas properties and the value of royalties, and sought to find a buyer other than the defendant for his royalty interest, but was unable to get a better offer than defendant had made him. In the meantime, Barclay and Godwin of defendant company called at his brother's house to see him about November 6th. and, after considerable conversation, they offered him $1,000 for his interest at his suggestion that it ought to be worth more than when his brothers and sister sold their interest

for $800, as the development of the proven oil territory had approached nearer to the land, and H. J. Barclay wrote out a check, in plaintiff's presence, for this amount and told him when he and his wife should sign the conveyance and acknowledge it he could cash the check. There is some conflict in the evidence as to what was done with the check when written. Plaintiff says it was given to him there and then, but Barclay says he took it to town and turned it over to Fred French, assistant cashier of the Bank of Commerce, who was a notary public, and directed him to deliver it to Davis when he and his wife came in and acknowledged the conveyance, and French's testimony corroborates Barclay, and, while we do not regard this disputed fact as material, we think the weight of the evidence on this point is with the defendant. It would make no difference whether he got the check at the time it was written or whether it was delivered to him by French after the acknowledgment was taken. The plaintiff and his wife appeared at the bank and advised with said Fred French about selling the royalty and its value, and he told them he thought it wise to sell and the price offered seemed to be reasonable, since no one could tell whether or not the oil and gas development would reach the Davis land. Thereupon French took their acknowledgment and kept the conveyance for the company and delivered to plaintiff the check, which he cashed. Thereafter, about June, 1923 plaintiff again visited his brother Percy and, in the meantime, oil had been discovered on the Davis land, and Percy told plaintiff that he received $1,200 for his royalty interest in the lease and $400 for recommending to him and the other brothers and sister that they should sell their interest at $800 each. Thereafter, on January 31, 1925, plaintiff filed this action with the result as above stated. These are the material facts in the case, and we think there are two questions to be answered decisive of the appeal.

1. The first is whether or not the facts, as above stated, are sufficient to show such fraud, on the part of the company in using the letter written by Percy Davis, the brother, to entitle plaintiff to the relief prayed for. As we view it, this question must be answered in the negative, for the reason that it is clear that plaintiff did not rely upon the representations of his brother as to the value of the royalty interest in the oil and gas lease. When he received the letters and conveyance to be executed, he waited nearly a month to answer, and in his answer he turned the $800 proposition down and

then went to Tonkawa and visited the said prospective oil field to investigate for himself. He talked to various persons, including real estate men, as to the value of the royalty involved, and tried to get a buyer, and he could not find a better price than the one offered by the defendant, and even then he refused to sell to the defendant for $800, but contended that he ought to have $1,000, because development had approached nearer the land than when he was offered $800 and the sale was finally made for the $1,000. It is reasonable to say that after plaintiff made his investigation, he was in as good position to know the value of his royalty interest as any one else. There was no development on the land and the oil values were speculative to every one, even the defendant owning the lease. The nearest well drilled was one-half a mile away and it was not known whether it would be a producer or a dry hole.

In the case of Wyrick v. Campbell, 67 Okla. 240, 170 Pac. 267, we have the following rule, which we think is applicable to this case:

"Where the purchaser undertakes to make investigations of his own, and the vendor does nothing to prevent his investigation from being as full as he chooses to make it, the purchaser cannot afterward allege that the vendor made misrepresentations, which amount to no more than an opinion as to the value."

This rule applies equally to the vendor as to the purchaser. In the case of Derdyn et ux. v. Low et al., 94 Okla. 41, 220 Pac. 945, we have the following rule, which we think is applicable to the case:

"Statements or misrepresentations between the parties having equal knowledge about the subject-matter will not constitute actionable fraud."

We do not think it material that the brother received $1,200 for his interest in the royalty and $400 to use his influence in assisting defendant to buy the interests of the other heirs, and that said brother represented to plaintiff that he sold his interest for $800, which was a false statement, since the scheme or conspiracy did not work in plaintiff's case. He refused to be influenced by his brother's letter and the statements therein made and rejected the $800 proposition made by the defendant, and chose to investigate the situation and make his own proposition to sell and fix his own price for his interest in the royalty, and the conveyance was executed as the result thereof, and not as the result of the representations made by his brother Percy.

2. The second question for consideration is whether or not plaintiff's action is barred by his laches. Defendant raises this question and calls our attention to the statute of rescission and contends for the affirmative of the same. Section 5079, Compiled Statutes, 1921, provides as follows:

"Rescission, when not affected by consent, can be accomplished only by the use, on the part of the party rescinding, of reasonable diligence to comply with the following rules: First: he must rescind promptly, upon discovering the facts which entitle him to rescind, if he is free from duress, menace, undue influence, or disability, and is aware of his right to rescind; and, second: he must restore to the other party everything of value which he has received from him under the contract: or must offer to restore the same, upon condition that such party shall do likewise, unless the latter is unable, or positively refuses to do so."

The record shows that plaintiff offered to restore the $1,000 he had received from defendant for the price of his royalty interest, but can we say, from the evidence, he acted promptly, after discovering the fraud, as required by the statute? It was in the month of June, 1923, when his brother Percy informed him that he received $1,200 for his royalty interest instead of $800 as he wrote him back in October, 1922, but plaintiff made no move to rescind until he brought this action, January 31, 1925, more than a year and a half after he learned the fraud he claimed was practiced upon him by defendant.

We are, therefore, of the opinion that plaintiff's right of action, even if fraud was practiced as he contended and as he alleged, was barred by his laches under the statute quoted.

The judgment of the trial court is, therefore, hereby affirmed.

By the Court: It is so ordered.

Note.—See under (1) 40 C. J. p. 1120, §752. (2) 9 C. J. p. 1200, §81; pp. 1207, 1209, §93; 4 R. C. L. p. 515; 1 R. C. L. Supp. p. 1157; 4 R. C. L. Supp. p. 272; 5 R. C. L. Supp. p. 245.