## KIOWA LUMBER CO. v. OKLAHOMA CITY BLDG. & LOAN ASS'N et al.

No. 21990. July 10, 1934.

Simons, McKnight, Simons & Mitchell, for plaintiff in error.

Everest, McKenzie, Halley & Gibbens, for defendants in error.

WELCH, J. This case presents a controversy for priority between a real estate mortgage holder and a materialman's lienholder on the real estate in question, being a certain lot in the city of Enid.

The trial court found in favor of the mortgage holder, defendant in error, hereinafter referred to as the loan company. The plaintiff in error, the Kiowa Lumber Company, hereinafter referred to as the lumber company, prosecutes this appeal.

The facts in material substance are that one Grissette purchased the lot in question from one Autrey on August 28, 1928, and at the same time contracted with and employed the said Autrey to build a certain apartment house thereon. Part of the consideration and contract price was paid, and construction began. Thereafter, on October 12, 1928, the owner, Grissette, borrowed money from the loan company and executed a real estate mortgage on the premises to secure the loan, which mortgage was duly recorded, and construction work on the apartment house continued. The lumber company furnished material used in the building from about the time construction was commenced thereon until that building was later completed; total price of material so furnished was $2,748.20.

After the mortgage had been recorded, and in December, 1928, the lumber company sold lumber to the owner, Grissette, for the building of a garage on the same lot. The garage was not constructed by the contractor, Autrey, but by another. The building of the garage was entirely separate from the contract with Autrey to build the apartment house. In December, when Grissette arranged to purchase material for the garage from the lumber company, he stated he was unable to pay for the material, but desired to arrange an extension for the cost of that material on his promissory note, and that arrangement was made and the lumber company took his note. The total materials furnished by the lumber company for the garage was $518.20.

About the end of December, the apartment house being completed, the proceeds of the loan were paid out by check of the loan company payable jointly to one Lemen and the owner, Grissette. The owner, Grissette, indorsed the check to Lemen that he might disburse the money. In disbursing the money Lemen was acting both for the loan company and for the owner. As to the loan company, the authority of Lemen was to disburse the money when all liens were satisfied, and he was to meet with persons who had performed the labor and furnished the material, and disburse the money, receiving waiver of lien from the persons to whom the money was paid. The lumber company, by its president or manager, was present and signed and delivered to Lemen a waiver of all liens on the premises, and received from Lemen his check for the cost of all materials furnished for the apartment house. The lumber company was not paid for the $518.20 for materials furnished for the garage. The waiver of lien signed by the lumber company was in no manner conditional or restricted and waived all claim of lien on the lot in question; both the apartment house and the garage were situate on the lot.

When the lumber company sold to Grissette the material for the garage it was contemplated by them, and expected by the lumber company, that all other material and all labor would be fully paid for, and that the lumber company would have a lien for the materials used in constructing the garage second only to the mortgage to the loan company. The lumber company at that time knew of the mortgage to the loan company and the recording thereof.

In considering the claim of the lumber company to the right of a lien for the garage material, at the outset, we are met with the waiver of all claims of lien signed and delivered by the lumber company when the loan money was paid out and the lumber company received pay for its materials furnished for the apartment house. To avoid the effect of that waiver the lumber company contends that the waiver was condi-

tional, and by reason of the failure of the conditions, that the waiver had no force and effect, and, in substance, that the waiver was obtained by the loan company by fraudulent misrepresentations.

As to that point, it appears that the lumber company objected to signing the waiver unless it was true that all other laborers and materialmen were to be paid so as to leave the lumber company with a lien for the $518.20, garage material, second only to the mortgage to the loan company. The manager of the lumber company testified that when he signed the waiver and delivered it to Lemen and received the check for the $2,748, he said: "Now, Mr. Lemen, if this is not settled up all right, anything happens that these bills are not settled, I will call you in the morning, and will bring your check back and take up this release of the Kiowa Lumber Company, and he said, 'all right,' and I picked up my check and walked out of the office." The next morning Mr. Teague, manager, called the Lemen place of business by telephone, and Mr. Lemen being absent, he talked with Mrs. Lemen and asked her "if everything is all right. She said, 'It is, go ahead and deposit your check'." Thereupon the lumber company cashed the check for the $2,748. The lumber company on that day made no effort to return the $2,748 and take up or withdraw the lien waiver, and thereafter never at any time made any effort to withdraw the lien waiver or to repay or tender back the $2,748.

At some time thereafter the lumber company did discover that everything was not all right, that is, that all other laborers and materialmen had not been paid, but so far as the record shows, the lumber company never made any effort to take back or withdraw its lien waiver executed to the loan company. The lumber company did on April 24, 1929, file its lien claim for the garage material in the sum of $518.20, and made no effort to impress any lien on the premises for the garage material of $518.20. This action was instituted by J. C. Bullock in April, 1929, to foreclose a laborer's lien for $20.25. By cross-petition the loan company sought foreclosure of its mortgage for default of the owner, Grissette, in making payments to the loan company in May, 1929, and thereafter, on June 26, 1929, the lumber company filed its answer and cross-petition claiming a lien for $518.20, superior to the lien of the loan company.

The trial court, after trial of the cause, made its findings and rendered judgment granting the lumber company a lien, but placing the same as subject to and inferior to the lien of the loan company, and it is to reverse that judgment that this appeal is prosecuted.

That the lumber company had a lien as against the owner, Grissette, is not disputed. There is some question as to whether the lumber company ever had or was entitled to a lien superior to the mortgage lien of the loan company, in view of the fact that the mortgage had been executed and recorded prior to the commencement of any construction of the garage, and prior to any sale of any of the garage materials to Grissette by the lumber company, and the construction of the garage being separate and apart from the original contract between the owner, Grissette, and the builder, Autrey, to construct the apartment house. See Dickason Goodman Lumber Co. v. Foresman, 120 Okla. 168, 251 P. 70. But whatever right the lumber company might have had, the same was expressly waived in writing. If the lumber company ever had any right upon the following day to return the $2,780 to Lemen and take up or withdraw its lien waiver, that right was waived and no attempt was made to act upon such right. The lumber company might have placed any desired limitation, restriction, or condition in its written lien waiver, but did not do so. No showing is made of any authority on the part of Lemen to accept an unconditional written waiver of lien and bind the loan company by an oral statement of conditions and limitations attaching to the waiver. If the lumber company had any rights whatever after delivering the lien waiver to Lemen, it was the right on the following day to return the $2,780 and take up or withdraw the lien waivers. The statement of Mrs. Lemen on the following day that "everything is all right" could hardly be construed as a warranty even on her part that the lumber company might rely and depend upon its expectation that all other labor and material claims had been or would be paid so as to leave the lumber company with its lien for the $518.20, second only to the mortgage indebtedness. At any rate there is no showing whatever of any authority on her part to bind the loan company to any such conditional acceptance of the complete waiver of lien signed by the lumber company.

Even upon the lumber company's contention that it was misled and imposed upon in the signing of the waiver, it had the right, upon discovering a different state of facts, to rescind or affirm. The filing of its lien and retention of the money paid, without earlier complaint, might indicate an intention to

abide the condition, though changed from the previous expectation. If the lumber company desired to rescind for fraud or misrepresentation, it must have proceeded properly to do so, in due time, and with proper offer of restoration. See section 9500, O. S. 1931, and Holcomb & Hoke Mfg. Co. v. Jones, 102 Okla. 175, 228 P. 968; J. Crouch & Son v. Huber et al., 87 Okla. 83, 209 P. 764; Simmons v. Harris, 108 Okla. 189, 235 P. 508; Davis et ux. v. Godwin-Barclay Co., 120 Okla. 274, 251 P. 1042; Nicholson v. Roberts, 144 Okla. 116, 289 P. 331.

The loan company fully disbursed the proceeds of the loan upon the unconditional lien waiver of the lumber company. The lumber company had its debt claim against the owner, Grissette, evidenced by his promissory note in the manner arranged when he purchased the garage materials. The lumber company also has its lien on the premises, subject, however, to the lien of the mortgage, which was of record prior to the commencement of the garage transaction, and prior to the furnishing of the garage materials.

The trial judge arranged the order of the liens as follows:

First lien to J. C. Bullock, W. C. Bartley, and Neal Walker in the aggregate sum of $104.62.

Second lien to the loan company for the amount of its mortgage lien.

Third lien to Autrey for $1,263.92, being the balance due on construction contract.

Fourth lien to the lumber company for the $518.20.

The lumber company does not complain of prior rank being given to the other liens, but contends only that the lumber company's lien should have priority over the loan company's lien. For the reasons hereinabove stated, we conclude that the judgment of the trial court properly arranged the priority of the liens of the loan company and the lumber company.

The plaintiff in error, the lumber company, complains of error of the trial court in rejecting evidence offered by the lumber company to show the conditional delivery of the lien waiver to Lemen, and to show fraudulent misrepresentations. This evidence was, in substance, the conversations between the manager of the lumber company and Lemen, and between the manager of the lumber company and Mrs. Lemen on the following day, and was, in substance, as above set out. That ruling of the trial court was free from error, and the judgment of the trial court is affirmed.

RILEY, C. J., and SWINDALL, McNEILL, and BAYLESS, JJ., concur.