HOBART v. PATRICK et al.

No. 35581.   March 31, 1953.

Rehearing Denied June 2, 1953.

*257 P. 2d 825.*

Moseley & Raynolds and Robert W. Raynolds, Tulsa, for plaintiff in error.

C. J. Davenport and T. L. Blakemore, Sapulpa, for defendants in error.

ARNOLD, J. This is an action by Fred L. Patrick and L. W. McEwen against Ethel F. Brock and P. M. Hobart et al. to quiet title to 5/64ths of the mineral interests in each of plaintiffs in and under the southeast quarter of section 8, township 17 north, range 10 east, in Creek county.

Mrs. P. M. Hobart was the owner of the fee-simple title to said quarter section. On May 15, 1940, she gave a deed to 3/8ths of the mineral interest therein to her husband, P. M. Hobart. He in turn deeded 5/32nds interest in the minerals to W. C. Brock, on May 16, 1940. On January 31, 1946, Ethel F. Brock deeded said 5/32nds mineral interest to L. W. McEwen, reciting in the deed that she was the "widow of W. C. Brock, deceased, and sole beneficiary of his estate." In April, 1947, McEwen conveyed the interest to R. H. Lovett. On December 2, 1949, Lovett conveyed the interest to F. L. Patrick, who, on January 18, 1950, reconveyed to McEwen one-half of the 5/32nds interest (it never being intended that Patrick should have more than one-half of the interest of McEwen).

Hobart admits that Ethel Brock is the widow of his grantee, W. C. Brock, but pleads and contends that his deed to Brock in 1940 was not intended as an outright conveyance but was made as a part of a written transaction between him and Brock under the provisions of which Brock assigned the working interest of a certain lease in Illinois (which he never did) and gave a bill of sale to the equipment on said lease to Hobart, and Hobart assigned to Brock a half interest in the lease on the northwest quarter of the southeast

quarter of section 8, township 17 north, range 10 east, Creek county (the record does not disclose whether this was done or not), and conveyed the 5/32nds mineral interest here in question to Brock "as additional security", with the further provision that Hobart was to drill a well on the northwest quarter of the southwest quarter of said section, and if said well were not a commercial well he would return to Brock $4,100 in cash and if the well were a commercial well Brock would reassign the 5/32nds mineral interest here in question to Hobart.

As to Patrick, Hobart contends that Patrick knew or should have known of his claim of title.

The court refused introduction of testimony offered by Hobart consisting of the written contract and correspondence between Brock and Mrs. Hobart concerning the transaction, as well as various assignments showing that the Illinois lease referred to in the written contract had been transferred to another party. The letter from Brock to Mrs. Hobart told her that he would send Hobart the assignment of the mineral interest if Hobart would return to him what he had received in furtherance of the provisions of the contract. The court refused this evidence upon the objection of Mrs. Brock upon the theory that Hobart was an incompetent witness under 12 O.S. 1951 §384, commonly known as the "Dead Man" statute.

The court fund that Patrick was an innocent purchaser, and entered judgment quieting title in 5/64ths of the minerals under said land in him and found that McEwen was not an innocent purchaser and quieted title in 5/64ths of the minerals in defendant and cross-petitioner Mrs. Ethel Brock.

McEwen did not appeal from the judgment against him quieting title in Mrs. Brock in the 5/64ths interest claimed by him. Mrs. Brock did not cross-appeal from the judgment quieting title in 5/64ths of the mineral in-

terest in Patrick. Hobart appeals complaining only of the judgment in favor of Mrs. Brock and F. L. Patrick. As to the judgment in favor of Patrick he complains that the evidence is not sufficient to sustain the holding of the court that Patrick was an innocent purchaser. As to Brock he claims prejudicial error in excluding his proffered testimony as to the written contract or transaction between him and Brock.

The testimony on behalf of Patrick generally is that McEwen offered to sell him one-half of the 5/32nds mineral interest in the tract of land involved; that he checked the title and the land; that he found the deeds on record as hereinbefore set forth; that he looked at the land which was located between two farms which he owned and observed a small stripper well in operation thereon; that he checked with the operator of the well and learned it was making only two barrels, but that the operator contemplated drilling another well within the near future; that upon the return of McEwen they agreed upon a price and McEwen procured a deed from Lovett to Patrick, as instructed, which he delivered to Patrick and received therefor the balance of the purchase price agreed upon, and Patrick filed the deed of record; that very shortly ·thereafter Patrick gave back to McEwen a deed to the 5/64ths of the mineral interest to correct the inadvertent mistake made by McEwen in giving him a deed for the full 5/32nds interest; that he never heard of any claim asserted by Hobart or Mrs. Brock until after his deal with McEwen was entirely closed; that he knew of Brock's deed and knew there was no transfer from him to Mrs. Brock of record, but that he knew from the recitation in the deed from Mrs. Brock to McEwen that she claimed to be the widow and sole beneficiary of W. C. Brock, deceased.

Hobart offered no evidence of any kind which would show that Patrick had any knowledge of Hobart's claim, nor did he offer any evidence which would show that Patrick knew of the written contract between him and Brock. However, he argues that because (1) there was no conveyance of record from W. C. Brock to Ethel Brock, which was an obvious defect in title, (2) there was a special clause in the quitclaim deed from Ethel Brock to McEwen purporting to convey only such interest as vested in her as beneficiary of the estate of W. C. Brock, deceased, (3) there was a producing well on the property, and (4) that when Patrick checked the record he found that both Hobart and Mrs. Brock executed a lease to Skelly, he knew or should have known that somebody other than Mrs. Brock claimed an interest and all of these facts were sufficient to put a reasonably prudent person on notice that there was an adverse claim to the mineral interest. Incidentally, he argues that Patrick failed to check possible suspended royalties and the lease to Gulf which he says if followed up would have disclosed the claim of Hobart.

In answer, Patrick says he is a practicing attorney and, of course, knew that he would have to quiet title to the mineral interest because of the lack of record of probate proceedings which would vest the record title of W. C. Brock in Mrs. Brock, but that made no difference to him because he knew that Mrs. Brock, as widow of W. C. Brock, was at least a forced heir under Oklahoma law and had sufficient title, with or without probate proceedings, which she could convey and upon which he could base quiet title proceedings; that he did not buy the mineral interest because of the small stripper well, for that was not producing in commercial quantities and was practically worthless, but the prospect of future wells to be drilled did make it of value as an investment; that he made no inquiry as to whether the runs were being paid or to whom they were being paid because he knew he would get only the runs from the date of his deed, anyway, and therefore he had no interest in the runs up to the date of his deed; that if

the oil company would pay the runs without a quiet title action that would be well and good, but if they refused because of the lack of probate proceedings he could easily quiet the title, and he knew Brock had been dead long enough that he could bring such action in district court and have Brock's heirs determined there without the necessity of having, ancillary probate proceedings. He testified he had no knowledge of any claim being asserted by Hobart or Brock until after he closed the deal with McEwen, when he asked Gulf Oil Corporation, the company buying the oil from the property, to prepare a division order for him to sign; that when he learned there were other claims he brought this action to quiet title, making party defendant thereto everyone that he could find out was asserting any claim of any nature.

The holding of the court that Patrick was an innocent purchaser is not clearly against the weight of the evidence.

Further, as to Brock, Hobart's oral testimony was that the deal between him and Brock was never carried out; that Brock transferred the Illinois lease to another person; the offered contract between him and Brock is as follows:

"This Agreement entered into this 18th day of May, 1940, by and between W. C. Brock, party of the first part, and P. M. Hobart, party of the second part.

"Witnesseth: The party of the first part hereby agrees to deliver by assignment the 13/16 working interest in and to a certain oil and gas lease dated 5/16/38—11/22/38 by and between C. M. Peiffer & E. L. Martin and also to furnish the bill of sale to the party of the second part for the entire equipment on the said lease;

"For and in consideration of the above mentioned the second party agrees to deliver to the party of the first part an undivided half interest in and to a certain oil and gas lease executed the 15th day of May, 1940, by Virginia Hobart to P. M. Hobart on the NW 4 of the SE4 of Section 8, Township 17

North, Range 10 East, containing 40 acres more or less, and also agrees to convey by deed the 5/32 of the royalty under the SE4 of Section 8, Township 17 North, Range 10 East, Creek County, Oklahoma, as additional security, and further agrees that in the event that a well which is to be drilled on the NW4 of the SW4 by the party of the second part is not a commercial well to return to the party of the first part the sum of $4100 Dollars ($4100.00) in cash; the same sum to be paid after it has been determined whether or not the said well will make a commercial well at a depth of thirty-one hundred feet (3100) or the Wilcox sand, he at his option can take a well at whatever depth he may find a commercial producer above the depth of thirty-one hundred feet (3100).

"In the event that a commercial well is made upon this above mentioned forty (40) acres, it is agreed by the party of the first part that he will assign back to the party of the second part the 5/32 royalty under the SE4 of Section 8, Township 17 North, Range 10 East.

"In Witness Whereof, said parties have hereunto set their hands the day and date first above written.

"W. C. Brock, Party of the First Part
"P. M. Hobart, Party of the Second Part."

On the basis of the foregoing proffered testimony, he contends that if the contract between him and Brock had been admitted in evidence his evidence would therefore have conclusively established that the title to the 5/32nds mineral interest was in Brock as trustee. Apparently, in this connection, however, he forgets that Brock at the inception of the deal between him and Hobart had given Hobart a bill of sale to all the personal property on the Illinois lease. Nobody contends that the terms of the written agreement between Brock and Hobart were complied with fully by either side and rescission has been sought by neither Brock nor Hobart. If the contract between Brock and Hobart had been re-

ceived in evidence, Hobart in order to require the return of the 5/32nds mineral interest would have to rescind, returning under the statute everything of value which he received from Brock. 15 O.S. 1951 §235: See, also, Davis v. Godwin-Barclay Co., 120 Okla. 274, 251 P. 1042. This did not occur, so even in the face of the uncompleted contract between Brock and Hobart, Mrs. Brock would be entitled to have the title to the 5/64ths mineral interest quieted in her, it being established that she was the sole beneficiary of her deceased husband. The error of the court in excluding the offered written transaction between Brock and Hobart, if it were error, was harmless.

Having come to this conclusion, it is unnecessary to discuss the other contentions made by Mrs. Brock that Hobart was barred by laches, that the mineral interest conveyed was not given as security, and that the proffered testimony of Hobart was correctly excluded under 12 O.S. 1951 §384.

Affirmed.

JOHNSON, V.C.J., and CORN, DAVISON, O'NEAL, WILLIAMS, and BLACKBIRD, JJ., concur.