St. Louis, Jacksonville and Chicago Railroad Co.

*v.*

James H. Lurton *et al.*

1. Contract—*construction.* A contract of a railroad company to build a bridge over its road at a given point, within one year after the completion of the road, imposes no obligation on the company to complete its road within any given period, or within a reasonable time, and the other party to the contract can not recover upon it for a failure of the company so to do.

2. Measure of damages—*on breach of contract to build a bridge over a railroad.* In a suit against a railroad company for a failure to build a bridge over its road at a given point, in pursuance of a contract so to do, the measure of damages is not the difference in the value of property to be affected by the bridge, or the want of it, but it is the cost of building such a bridge, together with reasonable compensation to the other party to the contract, for his time and labor in procuring and managing its construction, and perhaps such damage as may be sustained during the time required to build it.

3. A railroad company contracted with the owner of land over which its road ran, to build a bridge over its track at a specified point on said land, within twelve months after the completion of the road. The road was not completed for several years, and the bridge was never built: *Held,* in a suit on the contract by the owner of the land, he was not entitled to recover any damages on account of the delay in building the road.

4. Carrying demurrer back. Where the general issue has been filed to the whole declaration, a demurrer to a special plea will not be carried back to the declaration.

Appeal from the Circuit Court of Cass county; the Hon. Cyrus Epler, Judge, presiding.

Messrs. DUMMER & BROWN, for the appellant.

Messrs. MORRISON & WHITLOCK, for the appellees.

Mr. JUSTICE SCOTT delivered the opinion of the Court:

This action was brought on an agreement in substance as follows:   In consideration of appellees releasing unto the Jacksonville, Alton and St. Louis Railroad Company the right of way, and not prosecuting a suit pending in the Morgan circuit court for damages for right of way over lots in Lurton & Kidzie's addition to Jacksonville. the company agreed. within twelve months after its road should be completed and opened for use, to construct a good bridge over its road on the line of lots 4 and 5. in block 11, in that addition, or, if found desirable, the company to have the privilege of grading the cut on each side, so as to make a good crossing in lieu of the bridge.

The Jacksonville, Alton and St. Louis Railroad Company, with which this contract was made, had previously instituted proceedings to condemn the right of way over lots in Lurton & Kidzie's addition to Jacksonville.   The land owners, not being satisfied with the assessment, took an appeal to the circuit court.   During the pendency of that cause in the circuit court, Lurton & Kidzie sold all their interest in their addition to appellees, who, in consideration of the agreement of the company to build a bridge or construct a passway across the track of their road on the line of lots 4 and 5, in the time and manner as set forth in the contract declared on, dismissed the appeal and suffered the condemnation theretofore made to become absolute.

In 1863, the Jacksonville, Alton and St. Louis Railroad Company and the Tonica and Petersburg Railroad Company were consolidated under the name of appellant. the consolidated company assuming all the liabilities of the constituent companies.   Neither the bridge nor the passway over the railroad track was ever constructed as contemplated in the con-

tract.   The road was not completed and opened to use until the 1st day of January, 1866.   This suit was brought in 1870, to recover damages for a failure to build a bridge or grade the cut over the track of the road.

Appellees sold and conveyed all their interest in lots 4 and 5 in 1864. without any reservation except the right of way for the railroad, and an acre and one quarter previously sold to the trustees of the Insane Hospital.   This act of appellees put it out of the power of appellant, after that date, to construct the bridge or grade the cut over its road, no permission having been obtained from their grantees to enter upon the premises for that purpose.

The contract was made in 1858.   The theory upon which the declaration counts is, that it was the duty of the railroad company to construct and complete its road within a reasonable time, and that a period of twelve months had elapsed after the expiration of a reasonable time to finish the road before appellees parted with their interest in the lots.   In consequence of the failure of the company to comply with its contract, it is averred they sold lots 4 and 5 for $2500 less than they would have been worth had it completed the road within a reasonable time, and constructed the bridge or graded a passway in twelve months thereafter.

The other count retained in the declaration is, in substance, the same as the first amended count, except it is averred in it that appellees sold the lots for what they were worth at the date of the sale, which was greatly less than they would have been worth had the company performed its agreement.

To this declaration appellant filed the general issue, to which the *similiter* was added, and a number of special pleas. A demurrer was interposed to some of the special pleas, and sustained.   Appellant obtained leave to amend the 6th and 8th pleas, and filed additional pleas, to which replications were filed and issue joined thereon.

It is insisted the court erred in sustaining the demurrer to the special pleas, but should have carried it back to the decla-

ration. which it is now urged was fatally defective. This we do not think could be done. The general issue had been filed to the whole declaration, and it is a well settled rule of practice, a demurrer can not be carried back over that plea, and be made to reach any defects that may be found to exist in the declaration.

The defense is two-fold : First, the company maintains that, when all the circumstances are considered, there was no unreasonable delay in the completion of its road ; and, second, that, under the issues joined on the 6th and 8th pleas, before any right of action had accrued, appellees had sold the lots on the line of which the bridge was to be erected or the passway graded, and thus prevented the fulfillment of the contract.

We have considered the evidence in this record with great care, and, from our investigation, we are of opinion it does not sustain the verdict on the theory upon which the case seems to have been tried, viz : that it was the implied duty of the company to construct its road within a reasonable time after making the contract, and to build the bridge or grade the cut in twelve months after the expiration of that period.

The proof fails to show there was any unreasonable delay in the prosecution of the work, certainly none before June, 1864, when appellees parted with all their interest in the lots. It was a work of very considerable magnitude, requiring an expenditure of a sum between two and two and a half millions of dollars. The company had but little, if any capital of its own outside a limited number of municipal and private subscriptions, and had to rely principally upon the sale of its bonds to procure funds with which to build the road. These facts were of public notoriety, and must have been known to appellees at the time they entered into the contract.

The contract to complete the entire road was let to Sage & Edgerton in 1857, or in the early part of 1858. The work was commenced simultaneously at Jacksonville, Carrollton and Piasa. It was prosecuted with all reasonable dispatch,

so long as the company had or could get money with which to pay the contractors. Its funds were exhausted, and Sage & Edgerton, having no means of their own with which to continue the work, surrendered their contract in 1860. Bonds of the company were prepared, and every possible effort made to sell them. The president of the company went to New York, and employed persons of financial skill to assist him, but it was found to be impracticable to make sales. It was thought, in 1860, an arrangement had been made for the sale of the bonds, but the coming on of the civil war in 1861 put an end to all negotiations on the subject. The testimony shows beyond question that, during the period of financial depression that followed the breaking out of the rebellion, it was impossible to make any advantageous sales of the bonds of the company.

There is not a particle of evidence in the record that even tends to show the officers of the company did not put forth every exertion in their power to accomplish the completion of the road. No witness examined ventures to say they omitted anything that could have been accomplished by the exercise of the highest diligence in the discharge of their official duties.

In 1863, Mr. Blackstone was induced to contract to finish the road, and there is no suggestion there was any unnecessary delay after he entered upon the work.

There is another error in the record that is equally fatal to the present recovery. The proof shows a good bridge could have been built over the road for $150. There is no dispute as to this fact, and yet the verdict is for $1300. The result is to be attributed to the rule stated by the court to the jury, for ascertaining appellees' damages, in case of a recovery. The jury were instructed, it was the duty of the company to construct their road within a reasonable time after making the contract, and "if they find a verdict for the plaintiffs, the measure of damages is the difference in value of lots mentioned and not previously sold or conveyed, with the railroad

track across the same, and without the bridge or grade required at the time the bridge should have been built or said grade made, and what the same lots would have been worth at the said date with the said railroad track across the said premises, with the bridge, such as the contract contemplated, constructed at the proper time, or with the grading done at the time and in the manner provided for, not to include any loss in any portion of said lots sold before the time that the bridge should have been built or the grading done."

This instruction is liable to two objections:

*First*—It contemplates appellees may recover for a failure to construct the railroad within a reasonable time after making the contract with appellant. Or the objection may be stated in another form: Appellees, having sold the lots prior to the completion of the railroad over the premises, it is stated they may recover, as damages, the difference between the value of the lots when sold, and the enhanced value the construction of the road would have produced. This is not the true construction of the contract. The company never contracted with appellees to complete its road and open it to use within any given period. No allusion is made in the agreement as to when the road shall be finished ready for use. It is not perceived how appellees can recover of the company for the non-performance of a thing they never undertook to do within any specified time. Had it been the agreement the railroad should be constructed by a given date, it should have been set down in the written contract, and no doubt it would have been, if such had been the understanding of the parties. Having failed to secure an agreement to that effect, appellees can not recover for the non-construction of the railroad within a given period or within a reasonable time.

*Second*—The true measure of damages is not the difference between the value of the lots, when sold, and the imaginary or really enhanced value, had the railroad been constructed. The damages should have been limited to the cost of the bridge, together with reasonable compensation for the time

and labor of appellees in procuring and managing its construction, and perhaps whatever damages might have been sustained during the time required to build it.

It is inconceivable appellees would suffer a loss of $2700 in the sale of a part of two lots, as one of them states in his testimony that could have been avoided by the expenditure of the trifling sum of $150. This fact makes apparent the error of the rule laid down by the court in its charge for ascertaining the damages.

It is manifest the jury estimated damages for the non-completion of the railroad much more than for the omission to build a bridge or grade a passway over the track. This they had no right to do.

Appellant's refused instruction stated the rule as to the measure of damages that should have been adopted, with sufficient accuracy, and it ought to have been given. It was error to refuse it.

The judgment must be reversed and the cause remanded.

*Judgment reversed.*