SMITH v. KIOUS et ux.

No. 30632. March 21, 1944.

147 P. 2d 442.

Saunders & Van Wagner, of Shawnee, for plaintiff in error.

Joe Looney, of Wewoka, for defendants in error.

BAYLESS, J. Otis Kious and wife leased certain land in Seminole county to J. F. Smith, and later sued him in the district court of Pottawatomie county for damages for breaches of the covenants of the lease. Smith appeals from the judgment, based on the jury's verdict, in their favor.

The lease was for a one-year primary term, and contained the following express covenant, which forms the basis for the controversy: "A well shall be drilled to the Cromwell sand if oil and gas is not found in paying quantities at a lesser depth. Lessee agrees to test the Cromwell sand before the lease is turned back." Smith began drilling on the leased land shortly after receiving the lease, and drilled to a depth of 2,085 feet. It stands admitted that the Cromwell sand was found, if found at all, about 3,400 feet. Plaintiffs wrote Smith demanding that he continue drilling to the Cromwell sand, and thereafter Smith wrote plaintiffs advising he was releasing the lease and returning the abstract, etc. Smith plugged the well, removed his property, and filled the slush pits. This suit followed.

Both sides seem to agree that the main consideration for the lease, in addition to all other provisions, was the testing of the Cromwell sand by drilling at least one well, and that the above-quoted language governs. Smith contends that the sand was tested under the language above when a well was commenced and drilled to the point where a prudent operator, in view of all he had learned from subsurface indications experienced in the particular hole, would deem it unlikely that production could or would be obtained, at which point he could quit on the assumption he had tested the Cromwell sand and fulfilled his obligation. He says that at a depth of 2,085 feet the formations were so nonconforming that it was deemed unlikely that the Cromwell sand would be found under the well.

Plaintiffs contend that the language not only requires the testing of the Cromwell sand, in general terms, but it goes further and specifies how it shall be so tested, that is, by drilling a well to that sand.

The first contention Smith presents is that the trial court erred in permitting incompetent evidence to be introduced over his objections. The point of this argument is that the testimony of an expert witness offered by plaintiffs was incompetent by reason of the lack of qualification of the witness, the lack of personal knowledge on the part of this witness of the area, and that this witness admitted that many of his opinions were based upon the logs of wells surrounding the hole drilled by Smith about the identity of which logs, Smith contends, the witness could not be sure.

We are of the opinion that the issue of fact sought to be established by the testimony of this expert witness was one that had to be established by such a witness. We have said that whether or not the qualifications of a witness offered as an expert by reason of knowledge or special experience are sufficiently established is a matter resting largely in the discretion of the trial court, whose determination is usually final, and his ruling will not be disturbed on appeal except in extreme cases where it is manifest that extreme error has been made, or the trial court abused its discretion, or prejudice has resulted to the complaining parties; even though the appellate court might have decided

such issue differently in the first instance. Bell v. Tackett, 134 Okla. 164, 272 P. 461, and other cases. Applying this test to the facts in this case with respect to the qualification of the proffered witness from the standpoint of education and experience, we are of the opinion the trial court correctly permitted him to testify as an expert witness and give his opinion. Upon this premise, and considering the testimony of this witness as a whole, we are of the opinion there is no merit to the other points of objection to his testimony. He was examined and cross-examined at length and the argument made by Smith goes largely to the weight and value of his testimony, which is, after all, an issue for the jury.

The second contention of Smith is that the court erred in giving certain instructions to the jury. Instruction No. 2, which dealt with the burden of proof, is called to our attention as having placed the burden of proof upon the defendant "to either disprove that the Cromwell sand was present under the well drilled by the defendant on this lease under the first clause written in the lease, or that he made a test of the Cromwell sand under the second clause written in the lease." Smith argues that this is particularly erroneous and prejudicial because of his contention that the two clauses written in the lease were inconsistent. Smith adverts to this theory of inconsistency at another point in his argument and what we say here applies in both instances. Upon consideration of the above-quoted provisions of the lease, which were inserted in the usual printed commercial form, we are of the opinion that the two clauses are not inconsistent, but complement each other. Considering the last provision first, if this provision stood alone there might be some basis for Smith's argument, but when it, which by its terms requires a test of the Cromwell sand, is considered in connection with the preceding provision which requires a well to be drilled to the Cromwell sand, except in a certain contingency which is not here presented, we are of the opinion that the plaintiff thereby specified the manner in which the sand should be tested. The instruction complained of placed the burden of proof upon the plaintiffs with respect to the allegations of their petition and the issues thereby raised, and placed the burden of proof upon Smith with respect to the new matter set up in his answer as a defense, and considering the pleadings of the parties and the issues thus raised, we are of the opinion that the instruction is not subject to the criticism made. Instruction No. 5 told the jury that the measure of damages in this case is the reasonable cost of drilling a well to the Cromwell sand and testing the Cromwell sand. This is the measure of damages under our decisions in Ardizonne v. Archer, 72 Okla. 70, 178 P. 263, and later cases following its holding. In this connection Smith contends that the evidence of the plaintiffs respecting the damages which they seek, which was introduced over his objection, took into consideration items of expense in equipping the well when such items were not properly a part of the cost of drilling a well under the above decisions. Upon examination of the record we find that where the plaintiffs' witnesses itemized the cost of drilling and equipping a well, they recognize that certain items of equipment which were absolutely necessary to the completion of the well and testing the sand under certain types of tests were nevertheless not items of expense of the drilling proper and they allowed deductions therefor. The totals as first testified to were modified by the deductions, so the estimated costs were the last figures testified to. Thus, the objection of Smith was answered. Instruction No. 8 advised the jury respecting the admissibility of the testimony of expert witnesses and its purpose, and Smith limits his argument to the simple statement that such instruction was erroneous and constituted a misdirection of the jury, coupled with the further statement that it is the duty of the trial court to give correct instructions on fundamental issues on its own motion. We see nothing wrong with the instruction and are not required to hunt for ostensible errors which Smith has

not gone to the trouble to point out.

The third contention relates to certain instructions requested by Smith and refused by the trial court. As pointed out in the answer brief of the plaintiffs, these requested instructions, which raise issues of law only, are based upon an assumption of law different from that announced by this court and applied in Ardizonne v. Archer, supra, and other cases. For instance, Smith complains that in refusing to give these requested instructions, or any substantially similar thereto, the trial court failed to instruct the jury upon his theory of the law. Smith's theory of the law applicable to this situation based upon the terms of the contract is as stated above: That he, as a prudent operator, was free to cease drilling at any point when he believed that the operation to that point constituted a test indicating that production would likely not be obtained in the Cromwell sand from that well. As pointed out in Ardizonne v. Archer and the other cases, he assumed the obligation of drilling a well to the Cromwell sand, and by law he could not discharge his legal obligation by anything short of that. The instruction which he seeks the court to give did not reflect the law in Oklahoma on that subject and the trial court did not commit error in refusing to give them.

The judgment of the trial court must be affirmed. Plaintiffs call our attention to a supersedeas bond given in this case and copied into the record before us and moved for judgment thereon. This motion is granted and judgment is hereby rendered in favor of the plaintiffs against the sureties on said bond.

The matter is remanded to the trial court for further proceedings not inconsistent with this opinion.

CORN, C.J., GIBSON, V.C.J., and RILEY, WELCH, and HURST, JJ., concur.