Joe S. McGILL and Lois McGill, Plaintiffs in Error,

v.

The CITY OF STROUD, Oklahoma, a Municipal Corporation, Defendant in Error.

No. 42864.

Supreme Court of Oklahoma.

Nov. 23, 1971.

Rehearing Denied Jan. 31, 1972.

John W. Young, Glenn O. Young, Sapulpa, for plaintiffs in error.

Richard James, Stroud, Loeffler & Allen, Sapulpa, for defendant in error.

LAVENDER, Justice:

This appeal involves a jury verdict, and judgment, in a condemnation proceeding. The proceeding was commenced by the defendant in error, City of Stroud, Oklahoma, a municipal corporation, against the defendants in error, Joe S. McGill and Lois Mc-Gill, as the owners of the entire interest in four described tracts of land (containing a total of 461.61 acres), and of specified undivided interests in three other described tracts of land (containing a total of 65.20 acres), in Sections 6, 7 and 8, Township 15 North, Range 7 East, in Creek County, Oklahoma, and against a number of other parties as the owners of specified undivided interests in the three last-mentioned tracts.

The city sought to acquire the title to the seven tracts of land (less the oil, gas and other minerals), containing a total of 526.81 acres, for the purpose of constructing thereon a dam across a flowing, but non-navigable, stream known as Camp Creek, and impounding the waters thereof on these tracts, and quite a number of other tracts in Creek and Lincoln Counties, as a municipal water supply, and for public park purposes. The city had acquired all necessary certificates for the project.

Before commencing the proceeding, the city had purchased, by negotiation, the undivided interests of several other owners of the three tracts owned in common, equal to 14.59 acre-interests, leaving a total of 512.22 acre-interests in the seven tracts to be acquired by condemnation.

In addition to the 461.61 acres in which the McGills owned the entire interest, they owned undivided interests in the other three tracts equal to 44.31 acre-interests, for a total of 505.92 acre-interests in the seven tracts to be taken. The other condemnees named in the proceeding owned the remaining 6.30 of the 512.22 acre-interests in the seven tracts being taken in the proceeding.

These seven tracts, containing a total of 526.81 acres, were part of a larger tract, containing a total of 1,021.91 acres, upon which the McGills operated a cattle-ranching business. Of the additional 495.10 acres not being taken in the proceeding, the McGills owned the entire interest in 460.10 acres, and an undivided interest in the other 35 acres equal to 15.31 acre-interests, for a total of 475.41 acre-interests. In this ranching operation, the McGills also used a 72.48-acre tract of land in Lincoln County, in which they claimed the entire interest and which was separated from the 1,021.91-acre tract by some 490 to 500 feet, and also used a 160-acre tract of land in Section 15–15N–7E in Creek County, in which they claimed an undivided one-half interest (80 acre-interests) and which was separated from the 1,021.91-acre tract by one and three-fourths miles. Thus, the

McGills owned a total of 1,133.81 acre-interests in the lands they were using as a cattle ranch. Their ownership thereof is not questioned, and they do not question the necessity of the city's taking the land being taken in the proceeding. The city was actually taking 505.92 of the McGills' 1,133.81 acre-interests in the lands they were using as a cattle ranch, leaving them a total of 627.89 acre-interests therein, including their untaken 460.10 acre-interests in the above-mentioned 1,021.91-acre tract. Like the trial court and the parties' attorneys, we shall refer to the acre-interests in these lands as "acres."

Two of the three condemnation commissioners signed and filed a report fixing the McGills' total damages at $99,570.00, and the other condemnees' total damages at $698.75. The city paid those amounts to the court clerk for the benefit of the condemnees involved, and the $99,570.00 was withdrawn by Joe S. McGill and Lois McGill.

The city filed a timely demand for a jury trial on the question of damages. A timely demand for such a jury trial was filed on behalf of all of the condemnees, but that was withdrawn except with respect to the McGills and the damages sustained by them. The city then withdrew its demand for a jury trial except with respect to the McGills and the damages sustained by them. The other condemnees, and the damages sustained by them, were not involved in the trial in any way.

The jury's verdict, signed by nine of the jurors, fixed the amount of the McGills' damages at $70,000.00. Based upon that verdict, and the McGills' prior withdrawal of the $99,570.00 condemnation money paid in by the city, the trial court rendered judgment in favor of the city and against Joe S. McGill and Lois McGill in the amount of $29,570.00, with interest thereon at the rate of six per centum per annum from the date of the judgment, and taxed all costs of the proceeding subsequent to the date of the confirming of the commissioners' report against them.

After the overruling of their motion for a new trial, the McGills gave notice of intention to appeal to this court in the simplified form provided by statute and the rules of this court, and perfected the appeal in that form. The record on appeal, as designated by the parties, includes all of the instruments filed in the cause, but does not include all of the evidence offered at the trial.

The primary issue presented in this appeal concerns the instructions given to the jury.

The McGills' first proposition is that the trial court's statement of the case, accompanying and a part of the instructions, did not correctly inform the jurors as to the number of acres being taken by the city in this proceeding, because the city was, in fact, taking 512.22 acres, and also did not sufficiently identify the lands being taken or the lands claimed to be damaged by such taking. That statement says:

"Ladies and gentlemen of the jury, the plaintiff, The City of Stroud, Oklahoma, a municipal corporation, brings this action to acquire ownership and possession of surface rights to certain property of defendants, Joe S. McGill and Lois McGill, his wife, by action in condemnation to acquire, appropriate and condemn for public use the following tract of land situated in Creek County, Oklahoma, and described as follows: Tracts 1, 1A, 1B, 1C, 1D, 5B, 5C, being 505.92 acres. That defendants are the owner of the above land and also: Portions of Sec. 8, Sec. 7, Sec. 6, Sec. 15, all in Township 15 North, Range 7 East, Sec. 12 in Township 15 North, Rng. 7 East, all containing 627.89.

"You are duly sworn and impaneled as jurors to determine the value or just compensation to be paid the defendants for the above described 505.92 acres, and damages, if any, which you may find to the remaining 627.89 acres."

■ It is true that, in this condemnation proceeding as filed, the city did seek to take a total of 512.22 acre-interests from the McGills and a number of other condemnees named in the proceeding as filed. However, the McGills claimed to own only 505.92 of those acre-interests and asserted no claim to the other 6.30 acre-interests being taken by the city. Insofar as the jurors were concerned, the McGills were the only "defendants," 505.92 "acres" were being taken from them, and their interests in other lands in the vicinity of the lands being taken by the city amounted to 627.89 "acres." Several plats of the reservoir area, admitted in evidence without objection and included in the record on appeal, clearly identify the various tracts in which the McGills owned the entire interest or some undivided interest, and at least one of those plats clearly identifies Tracts 1, 1A, 1B, 1C, 1D, 5B, and 5C, as described in the city's petition, and clearly states the number of acres in each tract in the reservoir area in which the McGills claimed any interest, and the number of acre-interests claimed by them therein. This proposition is without merit.

In their second and third propositions, the McGills contend that it was error to give Instructions Nos. 3, 6, 8 and 10; that Instruction No. 10 is in conflict with Instruction No. 6, and No. 4 in conflict with No. 3, and No. 5 in conflict with Nos. 3 and 4; and that the instructions as a whole are conflicting and confusing and fail to outline clearly and understandably the issues to be determined by the jury, thereby resulting in a miscarriage of justice.

The specific instructions under attack are some, but not all, of the instructions concerning the determination of the amount of compensation or damages to be allowed the "defendants," Joe S. McGill and Lois McGill.

■ The trial court did not, in any single instruction, state the measure of damages in such cases as set forth in Grand River Dam Authority v. Gray et al. (1943), 192 Okl. 547, 138 P.2d 100, or, as set forth in a different way in State of Oklahoma ex rel. Department of Highways v. Weaver (1956), Okl., 297 P.2d 549. However, con-

sidered together, Instructions Nos. 5 and 9 state the measure of damages as set forth in both of those cases, and, when read with Instruction No. 4, allow the jurors, in determining the market values involved, to consider any factors which would sensibly affect the market values, as of the time of the taking and immediately thereafter, including (among other factors specifically mentioned) the adaptability of the land for purposes other than farming and ranching —not as the measure of market value, but "to the full extent that the prospect of demand for such use in the reasonably near future affects the market value at the time of the taking while the property is privately owned," in harmony with the rules stated and applied in cases such as State of Oklahoma ex rel. Department of Highways v. Weaver, supra, City of Tulsa v. Biles et al. (1961), Okl., 360 P.2d 723, Grand Hydro v. Grand River Dam Authority (1943), 192 Okl. 693, 139 P.2d 798, and State of Oklahoma ex rel. Department of Highways v. Robb et al. (1969), 454 P.2d 313.

■ Contrary to the McGills' contention, the trial court's Instruction No. 8, that "the market value of real property is the price which it will bring when it is offered for sale by one who desires but is not obliged to sell it and is bought by one who is under no necessity of having it," is not in conflict with the definition of the term "fair market value" set forth in City of Tulsa v. Creekmore (1934), 167 Okl. 298, 29 P.2d 101. It expresses the same idea of purely voluntary action on the part of both parties contained in that definition, and is in the exact language used in 2 Lewis, Eminent Domain (3d Ed.), paragraph 706, as quoted with approval by this court in discussing the rules of just compensation in City of Cushing v. Buckles et al. (1929), 134 Okl. 206, 273 P. 346, 348.

■ The instruction, in No. 6, not to consider any "benefits" accruing to the owners by reason of the improvements proposed by the city is in accordance with the provisions of Section 24 of Article 2 of the Oklahoma Constitution. The direction, in Instruction No. 6, not to consider "any speculative or fanciful value" is not in conflict with the concept of "fair market value," but is in harmony with all of the rules concerning just compensation in condemnation cases.

We cannot assume that the jurors ignored the preliminary statement accompanying, and a part of, the instructions, involved in the first proposition. Since there was no question about the amounts of McGill lands involved in the compensation to be received by the McGills, we cannot believe that the jurors were misled, or confused, by the references in Instruction No. 10 to "the owners and users" of the land being taken and the remaining land "owned and occupied" by them.

That part of Instruction No. 10 in which the court told the jurors that they must return a verdict for the defendants but in no event are the defendants to be made "either richer or poorer" than before the taking of the property, is not in conflict with the rules concerning just compensation in these cases. It states, in easily understood language, the underlying principle of law in these cases, stated in Kelly et al. v. Oklahoma Turnpike Authority (1954), Okl., 269 P.2d 359, 365, that the owner must receive full and "equivalent" compensation for the loss sustained by him.

■ The exclusion, in Instruction No. 3, of "any damages" which the McGills may have sustained solely because they were frustrated or prevented from carrying out any plans which they may have had for the use of their property prior to the taking obviously was not interpreted by the jurors as telling them that (because the McGills had planned to continue using all of their property as a ranching and farming unit) they could not allow the McGills any damages whatsoever. And the exclusion, in the same instruction, of any "additional damages" by reason of the fact that the land was being taken for the creation of a municipal water reservoir did not have the effect of telling the jurors that the city had,

theretofore, acquired the "water rights" appurtenant to the lands being taken. Both parts of the instruction are in harmony with the rules of just compensation stated in the above-cited cases, particularly the rule of exclusion of "additional damages" stated in the first paragraph of the syllabus to State ex rel. Department of Highways v. Weaver et al., supra.

■ In connection with their contention that the court failed to properly instruct the jury on the issues to be determined by the jury, the McGills argue that, because of a proviso to 11 O.S.1961 § 563, the court was required to instruct the jurors to make proper allowance for the "going concern" value of the McGills' ranching and farming business operation on the land involved. The record on appeal does not contain any evidence with respect to the value of that operation as a "going concern," either at the time of the taking or immediately thereafter. Consequently, even assuming the applicability and constitutionality of the proviso in question, we cannot say that the court erred in failing to give such an instruction.

Although we could not approve some of the instructions as model instructions, the instructions as a whole fairly present the law of the case, and there is no conflict between the different paragraphs thereof. According to City of Tulsa v. Lloyd et al. (1928), 129 Okl. 27, 263 P. 152, that is sufficient.

With one exception (which involves the overruling of their motion for a new trial), the remainder of the McGills' propositions on appeal are concerned with the admission, or the rejection, of evidence.

■ They contend that the court erred in admitting the testimony of Clarence Bunch, who testified as an expert upon behalf of the city, on the ground that his testimony discloses that he was not sufficiently qualified as an expert on the fair market values of real property in the vicinity of the land involved herein. For the most part, their argument under this proposition involves matters which would affect the weight to be given this witness' opinions concerning the "before" and "after" market values of the property involved. The weight to be given the testimony of one who is allowed to testify as an expert is for the jury to determine. Magnolia Petroleum Company et al. v. McGeeley (1950), 203 Okl. 470, 223 P.2d 131, 134. We have considered Mr. Bunch's testimony, on direct examination and on cross-examination, concerning his knowledge and special experience in the field involved. Neither extreme error, nor abuse of discretion, nor prejudice to the McGills as the result of the admission of his opinion as to the before and after market values of the property involved, is manifest, so this proposition cannot be sustained. Smith v. Kious et ux. (1944), 194 Okl. 17, 147 P.2d 442.

■ The McGills also contend that the court erred in admitting the testimony of Richard James, one of the attorneys of record for the City of Stroud, concerning the delivery of a key to him by one of the attorneys for the McGills. The record on appeal does not disclose any objection to such testimony. We cannot consider this alleged error.

■ They next contend that the court erred in refusing to allow their witness Carroll Whitney to testify as to the number of "city lots," 50 feet by 140 feet, the area of land taken from them would equal. Evidence concerning the area of land being taken was in evidence, so (if material herein) only simple arithmetic was involved. They also contend that the court erred in not permitting this witness to testify concerning the adaptability of their land for the impoundment of water. The record on appeal discloses that he was permitted to answer all questions concerning adaptability of the McGill land for various purposes, including the impoundment of water, based his estimates of the market value of the land thereon, and testified that he knew of no reason why any owner of this land could not get a "water permit" if one were needed in connection with the impoundment of water for some purpose.

The McGills contend that the court erred in refusing to admit at least the "work plan" portion of their Exhibit No. 1 in evidence. They argue that it contains extensive data relevant to the issue of the highest and best adaptable use of their land and, therefore, has a bearing upon the market value of the land. Examination of the exhibit discloses that it is a "Watershed Work Plan Agreement," between the Soil Conservation Service of the United States Department of Agriculture, as supervisor of the project, and the City of Stroud, one conservancy district, and two county soil and water conservation districts, as local sponsoring organizations. It provides for certain works of improvement for the "Salt-Camp Creek Watershed" in accordance with the "watershed work plan" attached to the agreement and made a part thereof.

According to the attached work plan (which consists of 61 pages), the watershed of Salt Creek and Camp Creek includes an area of 73,030 acres (114.11 square miles) located in Lincoln and Creek Counties in Oklahoma, and the "project" contemplated by the work plan involves the construction of one "multiple purpose structure" for water supply and recreation by the City of Stroud (with the area involved being designated as "Site 12"), *plus* twenty-four "floodwater retarding structures" (with the areas involved being designated as Sites 1 through 11 and 13 through 25). The watershed and the locations of the 25 "sites" are shown on an included "project map" that was admitted in evidence.

▮▮▮▮ The work plan indicates that it was prepared some four years prior to the commencement of this condemnation proceeding. The only data included in the rejected exhibit which would appear to have any possible bearing upon land values is an estimate made by an agency of the federal government as to the benefits, in dollars, expected to be derived by all of the un-inundated lands in the watershed as a result of the construction of all 25 of the proposed structures. We find nothing in the exhibit which would constitute evidence as to the highest and best adaptable use of any of the land in the watershed, or as to the fair market value of any of such lands, even as of the time the work plan was prepared. Any inferences as to the adaptability of any of the McGill land to the impoundment of water which might reasonably be drawn from the exhibit could, just as reasonably, be drawn from the city's petition in condemnation and the resolution annexed thereto, or from the plat showing the location of the city's proposed dam and reservoir and identifying the various tracts of land in which the McGills owned some interest. The trial court did not err in rejecting the exhibit.

The record on appeal includes the testimony of one expert witness upon behalf of the city (Clarence Bunch, mentioned above) and of one expert witness upon behalf of the McGills (Carroll Whitney, also mentioned above). According to the testimony of the McGills' expert witness, their total damages would be $283,452.50, and according to the testimony of the city's expert witness, the McGills' total damages would be $63,320.00.

We have found no prejudicial error in the trial court's rulings on the admission or rejection of evidence, or in its instructions to the jury. There is evidence reasonably tending to support the jury's verdict for $70,000.00, and the judgment is conformable to the verdict. The trial court did not abuse its discretion in overruling the McGills' motion for a new trial. In such a situation, the judgment will not be disturbed on appeal.

Judgment affirmed.

DAVISON, V. C. J., and JACKSON, IRWIN, HODGES, and McINERNEY, JJ. concur.

BERRY, C. J., dissents.